## JOHN V. L. FINDLAY

*vs.*

## R. BENNETT DARNALL, ATTORNEY.

*Taxes—When "Legally Demandable"—Provision in Mortgage.*

Since Acts 1916, ch. 630, and Acts 1918, ch. 261, provide that "state taxes shall be in arrear on and after the first day of January succeeding the levy," they are, until such date, not "legally demandable" for the purpose of a provision in a mortgage authorizing a sale thereunder for non-payment of taxes "when legally demandable."                   pp. 293-297

Acts 1908, ch. 344, a local law of Howard County, providing for notice to taxpayers of their liability to be published as "delinquent," and to have their property sold, unless their taxes are paid on or before the first of January following, and requiring the county treasurer, immediately upon the first day of January, to make a list of persons whose taxes are in arrears and notify them that their property will be sold if the taxes are not paid by the second Monday in April, in effect, provides that county taxes are not in arrears until the first day of January succeeding the levy.                   p. 298

The provision of the Howard County local law that all taxes unpaid on the first day of October following the levy shall thereafter bear interest does not in effect declare that after that date such taxes shall be regarded as in arrear, and the taxpayers as delinquent.                   pp. 299, 300

A sale under a mortgage cannot be based on an advertisement which began before a default thereunder.                   p. 301

*Opinion filed June 7th, 1923.*

Appeal from the Circuit Court for Howard County, In Equity (FORSYTHE, J.).

Proceedings by R. Bennett Darnall, attorney, against John V. L. Findlay for the sale of property under a mortgage. From a decree overruling exceptions to the sale, said Findlay appeals. Reversed.

The cause was submitted on briefs to BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Thomas Mackenzie,* for the appellant.

*Edward M. Hammond,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

A *per curiam* was filed in this case, in which it was shown that the decree was reversed and a sale reported set aside because a majority of the judges were of the opinion that there was no such default as authorized a sale to be made under the power in the mortgage at the time it was made. The case was submitted by both sides, and by reason of the differences of opinions between the judges, a number of consultations were held by those present (two being prevented by illness from being present for some weeks), and the writer of this opinion, to whom the case was not originally assigned, will confine the discussion of it to the one point stated in the *per curiam.*

The mortgage is dated June 6, 1921, is for twenty thousand dollars, payable three years after date, with interest payable semi-annually, as evidenced by two notes, one of $15,000, payable to three of the mortgagees, and the other for five thousand dollars, payable to another mortgagee. There is the usual condition making the mortgage void on the payment of principal and interest, when and as the same may be due and payable, and the performance of all covenants, and there is a covenant to pay all ground rent, taxes, assessments, etc., "when legally demandable."

There is a provision that in case of default being made in the payment of the money or the interest thereon, or in any agreement, covenant or condition of the mortgage, the entire mortgage debt shall be deemed due and demandable, and that in case of default the mortgagees or R. Bennett Darnall, their attorney or agent, can at any time after such default sell the property mortgaged or so much thereof as may be necessary. In case of sale it is provided that there shall be twenty days' notice of the time, place, manner and terms of sale in a newspaper published in Howard County, and such other notice as by the said mortgagees, their heirs or assigns may be deemed expedient. It then provides for the distribution of the proceeds of sale:

"First to the payment of all expenses incident to such sale, including a fee of five hundred dollars and a commission to the party making sale of said property equal to the commission allowed trustees for making sale of property by virtue of a decree of a court having equity jurisdiction in the State of Maryland," etc.

The only default in the covenants of the mortgage by the mortgagors alleged to exist was the non-payment of the taxes levied in 1922. The case is one of importance, as a similar covenant as to taxes, etc., is generally to be found in mortgages in the counties in this State, and the time when a default exists in such mortgages for non-payment of taxes should not be left in doubt. The case of *Condon* v. *Maynard,* 71 Md. 601, much relied on by the appellees, differs in some important respects from this. The covenant to pay the taxes was the same in that case as in this, "when legally demandable," but the taxes for the two years involved in that case (1887 and 1888) were unquestionably due and in arrear, and had been in the one case since January 1, 1888, and in the other since January 1, 1889. The property was not advertised for sale until February 8, 1889. The appellant in that case contended that, inasmuch as the local law required the

collector to give notice after January 1st that unless taxes in arrear were paid in thirty days he would proceed to sell, and no such notice had been given, they were not legally demandable, and there was no default in that particular. That contention was held to be not well founded, as it was not necessary for the mortgagee to wait until the tax collector had given the notice required by the local law before he could proceed to sell in enforcing the payment of taxes, if there was default in the covenant of the mortgage. The correctness of that conclusion may readily be conceded, but there is much more involved in this case.

There are some expressions in that opinion which, when considered by themselves, may support the appellee's contention in this case, but other parts of the opinion explain what was meant, and very clearly show all that was decided in that case. For example, Judge McSherry, in considering the local law relied on in that case, in connection with the enforcement of the payment of taxes by the collector, said: "The collection of these taxes could not have been enforced 'according to law,' that is, by legal process, unless the notice had first been given; but the taxes were none the less due and in arrear, and, therefore, legally demandable when Maynard instituted these proceedings. The sections of the local code relied on relate exclusively to the mode of *enforcing* the payment of overdue taxes. The taxes must necessarily be due before payment can be enforced, and when due they are legally demandable, though summary proceedings to compel payment be not at once resorted to." But he did not mean, and could not have meant, that because they were "due" in the sense that they could be then paid, they were legally demandable. On the contrary, he had previously said: "Taxes may be paid immediately after they have been levied, and from that time the statute of limitations begins to run. Code, Art. 81, Sect. 83. They do not, however, become due and in arrear until the first day of January next after the date of the levy. Code, art. 81, sec. 67; Local Code,

art. 7, sec. 129 ; *Wheeler et ux.* v. *Addison,* 54 Md. 41.   They
bear interest from that date.   Ordinarily a debt may be said
to be legally demandable when it is due, and as the taxes for
1887 were certainly due and in arrear on January 1st, 1888,
and as the taxes for 1888 were due and in arrear on January
1st, 1889, they were for both years due and in arrear on Feb-
ruary 8th, 1889, and were, therefore, legally demandable
long before these proceedings were inaugurated, unless some
local law of Carroll County makes a different or an incon-
sistent provision."   He then considered that local law as
stated above.

It will be observed that Judge McSherry cited *Wheeler* v.
*Addison* in connection with what we have quoted above. When
that case was decided, and when *Condon* v. *Maynard* was de-
cided, sec. 63 of chap. 483 of Act of 1874 was in force and
provided that, "Whenever a sale of either real or personal
property shall be made by any ministerial officer under judi-
cial process or otherwise, all sums due and in arrears for
taxes from the parties whose property is (to be) sold, shall be
first paid and satisfied, and the officer or person selling shall
pay the same to the collector of the county or city, if any,
or to the treasurer, if there be no collector."   That is codified
in section 64 of article 81 in Code of 1888, except the words
"to be" in brackets above are omitted.   By sec. 66 of the Act
of 1874 it was provided that "Taxes shall be considered in
arrear on the first day of January next succeeding the date of
their levy, and shall bear interest from their date at the rate
of six per centum per annum."   That is the same as section
67 of article 81 of Code of 1888, except by the Act of 1888,
ch. 515, it was made inapplicable to Garrett County.

In *Wheeler* v. *Addison* some real estate had been sold on
the 14th of September, 1877, by a trustee under a decree in
equity, and the state and county taxes for the year 1877 on
said estate paid out of the proceeds of the sale were disal-
lowed on exceptions filed because said taxes were not due and
in arrear until the first of January, 1878.   The above sec-

tions of the Code were continued in the Annotated Code as sections 68 and 72, respectively. There can be no doubt about the question, it seems to us, up to and including the time of the adoption of that Code, excepting when there was some exception to the general law made by the local laws of some of the counties as to county taxes. Unless *Wheeler* v. *Addison* and similar cases were overruled, if the law had been continued as it was in the Annotated Code, and there had been a sale under such a mortgage as this, the taxes could not have been distributed to, as they were not in arrear. In *State* v. *Safe Deposit and Trust Co.,* 86 Md. 581, we held that taxes on shares of stock were, under the law as it then existed, due and in arrear on November 1st, for the reason stated by Judge Briscoe, and, although the assessment was made on or before May 15 and became final on June 15, there were no taxes for that year due and payable at the time of the sale (May 23rd) properly chargeable against the trustee, because "the statute provides only for the payment of such taxes as may be due and in arrear at the time of the sale of the property."

The appellee contends, however, that the whole policy of the law has been changed as to Howard County by later statutes, and hence it becomes necessary to consider them. Section 48 of article 81 of the Annotated Code provided for a discount of state taxes as there mentioned. Section 28 of article 81 made it the duty of the County Commissioners of the several counties and the Mayor and City Council of Baltimore annually, on or before the third Tuesday of April, to impose the state taxes prescribed by law. By chapter 630 of the Acts of 1916, section 48 was amended so as to read: "The state taxes levied in pursuance of section 28 of this article and all taxes due from incorporated institutions of this State shall be due and payable on and after the first day of July in the year in which they are levied (and if not paid on or before the first day of September in said year, shall bear interest from said date at the rate of six per centum per annum). * * * Said state taxes shall be in arrear on and after

the first day of January succeeding the date of levy, and it shall be the duty of said collectors, treasurers and other officers who may be charged with the collection of the same, immediately thereafter to proceed to collect said taxes in arrears in accordance with the provisions of law for the collection of delinquent taxes." By chapter 261 of the acts of 1918 the above act of 1916 was amended so as to provide, in place of what we have placed in brackets above, that "on taxes which are not paid before the first day of October in said year, interest of one-half of one per cent. shall be charged if paid at any time during said month of October, and interest of one-half of one per cent. shall be charged for each additional month or fraction thereof that such taxes remain unpaid." The other provisions quoted above from the Act of 1916 are the same as in the Act of 1918, including the provision that *"Said state taxes shall be in arrear on and after the first day of January succeeding the date of levy,"* etc.

It is said by the appellee that section 72 of article 81 had been repealed before the sale referred to, and while that is true, that was done by the Act of 1916, which made the state taxes bear interest from the first day of September and re-enacted the provision in reference to the state taxes being in arrear on and after the first day of January. There are so many local laws throughout the State it was very proper and less confusing to repeal section 72, but the time when state taxes shall be in arrear was not changed and was expressly declared to be January 1st and so continued in the Act of 1918. The local law of Howard County, in reference to the county treasurer and providing for the county taxes, by section 5 of chapter 455 of Acts of 1900 amended section 5 of chapter 317 of the Acts of 1896 so as to provide that, "All taxes unpaid on the first day of October following the levy shall bear interest from said first day of October until paid, at the rate of six per centum per annum, and said treasurer shall account for said interest in his settlement with the county commissioners." That section of the Act of 1896 had

allowed discounts for payments in several months named and provided for interest from January first on taxes not paid by that time. By chapter 344 of the Acts of 1908, section 7 was amended and provides that "It shall be the duty of the treasurer, as soon as the annual tax levy shall have been made and placed in his hands, to give notice thereof by advertisement in one newspaper published in Howard County, which notice shall state the time from which taxes bear interest, and shall warn all tax-payers of their liability to be published as delinquent tax-payers and to have their property sold unless the taxes with which they are charged are paid on or before the first day of January then next ensuing. He shall also, immediately after the levy is made, make out the bill of each tax-payer, to which a similar notice shall be annexed, and upon application; shall forward the bill by mail or otherwise to the person, or his agent, to whom taxes have been assessed. Immediately upon the first day of January, in each and every year, he shall make an alphabetical list by election districts, as now established by law, in their numerical order, of taxes due and in arrears, which list shall contain the name or names of the person or persons or body corporate assessed with property upon which taxes are due and in arrears * * * and the amount of the tax levied and in arrears, with the interest and costs accrued and to accrue thereon to the day of sale, to which list shall be appended a notice that if the said tax or taxes are not paid on or before the second Monday of April next ensuing, together with the interest accrued thereon and the proportional cost of advertising and fees he will proceed at ten o'clock A. M. on the said second Monday of April" to sell, etc.

A tax bill was made out for the appellants upon which a notice was given as required by section 7 of the acts of 1908. It seems clear to us that that section in substance provides that the county taxes are not in arrears until the first day of January succeeding the levy. Conceding that the provisions of that section may be intended primarily for the collection

of taxes, they, by their terms, also give notice to tax-payers, as soon as the levy is made, when they must pay their taxes. There is nothing in the section to indicate that they are to be treated as delinquent tax-payers before January 1st, but on the contrary, a fair construction of it is that they are not to be so regarded unless they do not pay their taxes on or before that date. They are not "delinquent tax-payers" then, and there is nothing to show that they will or can be regarded as such until January 1st. It is true that interest begins to run on October 1st if the taxes are not paid, but, as we have seen, state taxes begin to bear interest on that day and yet they are not declared to be in arrear until the first day of January, and, as we have seen, a fair interpretation of this local law is to the same effect. There can be no doubt that proceedings for the recovery of the state tax or the county tax could not have been validly begun before January 1st. In *Baltimore City* v. *Chester R. S. Co.,* 103 Md. 400, this Court held that an action of assumpsit could not be maintained for the taxes there involved, as they were governed by what was then section 70 (72 in Ann. Code) of article 81, which provides that "taxes shall be considered in arrear on the first day of January," etc. JUDGE JONES said, "The taxes here sued for therefore were not due and enforceable, according to repeated decisions of this Court, until the first day of January, 1906," citing *Wheeler* v. *Addison, Condon* v. *Maynard, and State* v. *Safe Deposit and Trust Company.* Although section 72 has been repealed, as stated above, that can make no possible difference, inasmuch as we have seen that the Act of 1918 in terms provided that the state taxes should be in arrear on the first day of January and the local law of 1908 in effect makes the same provision.

Before section 72 of article 81 was repealed there was no practice in the counties which we are aware of to the effect that under such a covenant as there is in this mortgage (covenant to pay when legally demandable), there was a default in payment of taxes before the first of January, but on the con-

trary, in sales made under powers in mortgages before January 1st succeeding the year in which the taxes were levied, such taxes were not allowed in the audits, notwithstanding section 68 of article 81 referred to above, as although the first part of the section contained the provision "upon which taxes are due and payable" they were not in arrears.

As the statute, section 48, in terms provides that the state taxes shall be in arrear on and after the first of January, we cannot see how there can be any question about the state taxes, even if it should be contended that our construction of the Act of 1908 as to county taxes was wrong. There is no ground that we can see to base an argument on, that as the interest was due under the local law on October 1st, the sale on October 17th was valid. It cannot be properly said that there was a default in payment of county taxes before October 1st, even if it be conceded that there was on that day, if not paid. There was no additional burden added as to those taxes from the time of the levy up to October 1st, when the interest of a half of one per cent was added for that month— $1.91. Can it be that a court of equity would be justified in construing this covenant to mean that the additional burden of $1.91, interest for the month of October, not only causes the principal debt of $20,000.00 to mature nearly two years before the notes were originally payable, but required the mortgagors to pay a fee of $500.00 besides the commissions and costs? As JUDGE MCSHERRY said, in *Condon* v. *Maynard,* "a court of equity is always reluctant to lend any aid towards consummating oppressive contracts, especially when its intervention would, in effect, result in the enforcement of a forfeiture." It is only just to Mr. Darnall to say that he expressed himself as willing to adjust satisfactorily the question of fees and commissions, if the appellants made an arrangement to reduce the debt so as to secure the mortgage which, by reason of the condition of the improvements, his clients and he were doubtful as to the sufficiency of the security, and he wrote to the appellants a number of letters

urging the payment of the taxes which he claimed to be due on the first of July. While we think he was mistaken as to that, we are satisfied that he had no desire to take any advantage of the appellants and if the property is worth even what it is assessed for, and what it was supposed to be worth when the mortgage was taken, a little over a year before the sale, the appellants ought, if possible, to have complied with Mr. Darnall's request and relieved his clients and him of anxiety by making some provision as to at least a part of the mortgage debt. But while we deemed it proper to thus refer to Mr. Darnall, the question before us has to be met, not by what our knowledge of Mr. Darnall leads us to believe of him, but by what would be possible in the hands of people less just, who might take advantage of such conditions as we have referred to, under the terms of the mortgage as contended for.

It is contended that at least after the interest became due (October 1st) there was a default, and the sale was not made until October 17th. But we know of no authority which justifies a sale to be made based on an advertisement which began some time prior to October 1st. Just when the first advertisement appeared is not shown, but it was apparently some time about or after the middle of September. If, as we can have no doubt, there was no default as to the taxes before October 1st, the twenty days notice required by the mortgage in order to sell must have been after the default, and it could not be anticipated and begun before the time of default. The language of the mortgage would seem to be clear as to that, as it only provides for a sale in case of default and it cannot be contended that a mortgagee has the right to advertise the property on which his mortgage is, in anticipation that there is going to be a default. Under the terms of this particular mortgage, after there has been one insertion of the advertisement in the paper, the mortgagors can only redeem the property by paying the principal and interest, the costs and expenses, including one-half of the commissions. An advertisement of that kind might very

well prevent a mortgagor from getting the amount necessary to pay off the mortgage, for after a property is advertised some people would be timid about it and we can find no authority anywhere to justify an advertisement prior to default under a power of sale of this kind. It may be well to add that it is apparent that Mr. Darnall did not intend to advertise before default, as he claims that the default occurred on the first of July. As we have already shown, we do not agree with him as to that and are satisfied that there was no such default when the property was sold as authorized a sale. We were therefore compelled to reverse the decree below and set aside the sale, as was done by the *per curiam*.