GOTTLIEB C. LOTTERER, Executor of Robert W. Maxwell, Deceased,

*vs.*

NETTIE LEON.

---

J. SEYMOUR T. WATERS, Trustee,

*vs.*

NETTIE LEON.

---

THE NEIGHBORHOOD CORPORATION

*vs.*

NETTIE LEON.

*Foreclosure of Mortgage—Non-Payment of Taxes.*

Where the mortgagor covenanted to pay all taxes when legally payable, and the mortgage expressly provided that, "in case of any default being made in any covenant or condition" therein, the whole mortgage debt "shall be deemed due and payable," and sale may be made by the trustee who may be named, the mortgagee may, upon default in the payment of taxes, treat the whole mortgage debt as due, and proceed to a sale of the property, and his motive in so doing is immaterial. pp. 323-328

Where an appeal was taken by one not a party to the suit in the court below, although he filed a petition therein, *held* that the appeal should be dismissed. p. 329

*Decided April 7th, 1921.*

Three appeals in one record from the Circuit Court of Baltimore City (STANTON, J.).

The cause was argued before Boyd, C. J., Briscoe, Thomas, Pattison, Urner, Stockbridge, Adkins, and Offutt, JJ.

*J. Seymour T. Waters* for Gottlieb C. Lotterer, Executor, appellant.

*W. L. Marbury,* for J. Seymour T. Waters, Trustee, appellant.

*Edward S. Stanley,* submitting on brief, for The Neighborhood Corporation, appellant.

*Benjamin L. Freeny* and *George W. F. McMechen,* for the appellee.

Thomas, J., delivered the opinion of the court.

On the 6th of August, 1919, Robert W. Maxwell sold and conveyed the property known as No. 1212 Bolton Street, in the City of Baltimore, to Nettie Leon, of said city, and on the same day took from her a mortgage of the property for $4,500 in part payment of the purchase money. The mortgage contained an agreement on the part of the mortgagor to pay said sum "at the expiration of three years from the date" of the mortgage, with interest at six per cent. per annum, payable semi-annually, and "to pay five hundred dollars yearly" on account of the principal, and her assent to a decree for a sale of the property in accordance with Sections 720 to 723 of Chapter 123 of the Acts of 1898. It contained also an agreement that until default the mortgagor, her executors, administrators or assigns, should possess the property, "upon paying, in the meantime, all taxes and assessments, public dues and charges levied or assessed, or to be levied or assessed," on the property, "which taxes, mortgage debt and interest, charges and assessments" the mortgagor covenanted to pay "when legally payable," and the further provision that "in case of any default being made in the payment of the aforesaid mortgage debt, principal or interest, in whole or in part, at the time or times limited and mentioned for the pay-

ment of the same, as aforesaid, or in case of any default being made in any covenant or condition of the mortgage, then the whole mortgage debt hereby intended to be secured shall be deemed due and payable, and sale of said mortgaged property may be made by the trustee or trustees named in such decree as may be passed, as aforesaid, for the sale of said property."

By Section 40 of said Act of 1898, as amended by the Act of 1914, Chapter 532, taxes are required to be levied in the month of November of the year preceding the year for which they are levied, and are due and may be paid on the first day of January following the levy. They are, by that section, declared to be "in arrears" on, and to bear interest from, the first day of July following the date of the levy, and Section 51 of said Act of 1914 requires the City Collector, at least two weeks before the taxes "become in arrear," to give notice by advertisement in two daily newspapers published in the city, and in the *Municipal Journal,* of the date when taxes "become in arrear," and that if the taxes are not paid on or before that date the property on which they are levied will be subject to sale for taxes, and that if not paid before they become in arrear an amount equal to one per cent. per annum from that date will be added to each bill, as a penalty.

The City Collector having, in June, 1920, given the notice required by the Act of 1898, Mr. Maxwell, the mortgagee, on the 3rd of August, 1920, went to the Collector's office to inquire if the taxes on the property covered by the mortgage had been paid, and upon being informed that they had not, he asked for a bill of the taxes and later, on the same day, took the bill, amounting to $158.42, and his mortgage, to the office of J. Seymour T. Waters, Esq., an attorney at law, and employed him to "foreclose" the mortgage. Mr. Waters on the same day wrote to Mrs. Leon, the mortgagor, telling her that Mr. Maxwell had placed the mortgage in his hands to foreclose, and that he would be obliged to proceed to advertise and sell the property, and on the following day, August 4th,

1920, he filed in the Circuit Court of Baltimore City a petition alleging that there had been a default under the terms of the mortgage, and praying for a decree for a sale of the property, and a decree was passed on that day appointing him trustee to make the sale.

It appears from the record that a certain Abraham Forschleger had obtained title to the property covered by the mortgage, and that he and his wife, by deed dated the 30th of July, 1920, and recorded on August 6th, 1920, conveyed it, subject to the mortgage in favor of Maxwell, to Joshua H. Green and Iantha G. Green, his wife, "as tenants by the entireties," who executed a second mortgage on the property to the Hebron Building and Loan Association, Incorporated, to secure an advance of $3,510. On the 5th of August, 1920, Benjamin L. Freeny, Esq., as attorney for Mr. Forschleger, and representing the building association, mailed to Mr. Maxwell his check for $500 and Mr. Forschleger's check for $135, to cover the payment on the principal and the interest on his mortgage due on the 6th of August, 1920, and when Mr. Maxwell received the checks on the 6th of August, he took them to Mr. Waters, who on that day returned them to Mr. Freeny and told him they would not be accepted, because there had been a default and the whole mortgage debt was due. No offer having been made in the meantime to pay the mortgage, the trustee on the 25th of August, 1920, advertised the property for sale under the decree of August 4th, and thereupon, on the 7th of September, 1920, Green and wife filed their petition in said court setting out their title to the property, alleging their tender to the mortgagee of said checks for $500 and $135 and the refusal of the mortgagee to accept the same; that at the time of said advertisement of the property for sale there was no default under the terms of the mortgage, that the terms and conditions of the mortgage had been fully complied with as far as was in their "power and control," that they were still ready and willing

to place said checks in the hands of the mortgagee or his attorney, and praying the court to pass an order restraining the mortgagee and the trustee from "further proceeding with * * * the sale of the property." Upon this petition the court passed an order restraining the mortgagee and trustee as prayed, unless cause to the contrary be shown on or before the day named therein. In response to this order the mortgagee and trustee filed their answers setting out the default to which we have referred, admitting their refusal thereafter to accept the checks referred to, and alleging that no offer having been made by the petitioners, or on their behalf, to pay the whole of the mortgage debt, after waiting until the 25th of August, 1920, the trustee advertised the property for sale in accordance with the decree. On the 18th of September, 1920, The Neighborhood Corporation filed a petition in said cause alleging that it had become the holder of the mortgage given by Green and wife to the building association; that the mortgagors were in default under the terms of said mortgage; that while the sum secured by the two mortgages was more than the value of the property, if the property was sold at once it would bring "a sufficient sum to pay both mortgages in full," and praying that the property be sold at once by the trustee in accordance with the advertisement.

After a hearing, at which evidence was taken disclosing the facts to which we have referred, the court below, on the 20th of September, 1920, passed an order enjoining the sale of the property advertised to take place on that day, and requiring Green and wife to pay into court to the credit of Robert W. Maxwell, mortgagee, $635, $500 of which "to be applied to the amount of the mortgage debt" and $135 "to be credited to the interest thereon due August 6th, 1920," and also requiring Green and wife to pay the "court costs and advertising fees in the case." From that order Robert W. Maxwell, mortgagee, J. Seymour T. Waters, trustee, and The Neighborhood Corporation, entered separate appeals.

No opinion was filed by the court below and we do not know the ground upon which the decree appealed from was passed, but it is said in the appellee's brief: "It is not contended by the appellee that the non-payment of the taxes for the current year does not constitute a default, but it does not constitute such a default, especially when the same were paid at once, as to permit the enforcement thereof for the purpose of oppression," and that "equity never aids in enforcing a penalty."

The mortgagor covenanted to pay "all taxes," etc., "levied and assessed" on the property "when legally payable." The undisputed evidence shows that taxes to the amount of $156.63 were payable on the 1st day of Jaunary, 1920, and had been in arrear from the 1st day of July, 1920, when the decree of August 4th was obtained, and the mortgage expressly provided that "in case of any default being made in any covenant or condition" of the mortgage the whole mortgage debt thereby intended to be secured "shall be deemed due and payable," and sale of the mortgaged property "may be made by the trustee" named in the decree.

It is said in 1 *Jones, Mortgages* (5th Ed.), Section 76: "A stipulation that the whole sum shall become due and payable upon any default in the payment of the principal or interest is universally held to be legal and valid. It is not objectionable as being in the nature of a penalty," and in Section 77 of the same volume it is said: "A stipulation in a mortgage that, upon a failure to pay the taxes levied upon the premises, the principal shall become immediately due and payable, is valid. It is similar to the provision very common in mortgages, * * * that the principal shall become due on a failure to pay the interest promptly." In Section 1181 of Volume 2 of the same work the author says: "Such a provision in a mortgage is not considered a penalty, but an agreement as to the time when the debt shall become due," and in Section 1185 it is said: "The court has no power to relieve a mortgagor from a forfeiture of condition that the

whole principal shall become due at the election of the mortgagee upon a failure to pay the interest, or to order a stay of proceedings until a further default, unless fraud or improper conduct on the plaintiff's part is proved. * * * The mortgagor, having negligently permitted the time to pass, and the whole debt thereby to become due, cannot relieve the forfeiture by paying into court the interest or installment on which the forfeiture occurred." The same rule is stated in 19 *R. C. L.,* Sec. 289, p. 493, where it is said: "The proposition is accepted without dispute that a stipulation in a mortgage providing for the whole debt secured thereby shall become due and payable upon failure of the mortgagor to pay the interest annually or to comply with any other condition of the mortgage is a legal, valid and enforceable stipulation and is not in the nature of a penalty or forfeiture." These rules and principles applicable to mortgages are fully recognized and have been uniformly applied in this State. In the case of *Schooley* v. *Romain,* 31 Md. 579, where a bill was filed to foreclose a mortgage, and where it was contended that the condition in the mortgage, that upon default in payment of interest the whole principal should become due, was in the nature of a penalty or forfeiture, and that its breach would be relieved against in equity, the lower court said: "But in no aspect of the case can the condition of the mortgage be viewed in the light of a penalty or forfeiture, and as such, be relieved against in equity. The reasoning of the court in the case of *Ferris* v. *Ferris,* 28 Barb. 29, covers this point so fully, that we adopt it and apply it to this case. * * * In this case also the equity of redemption had been sold, and the purchaser, who was a married woman, in her answer sets up the absence of her husband and her own ignorance. The facts of the case were in all respects very similar to the one now under consideration. In deciding the case the Judge says: 'It is urged that this is a forfeiture, and that equity will always relieve a party against a forfeiture. The plaintiff's claim is for the money secured by

the bond and interest. There is nothing more claimed. The debtor owes the amount; he forfeits nothing; he is required to pay nothing but his debt; there is no forfeiture to be relieved. * * * Nor can it be called a penalty; that is a sum named as damages to be recovered for violating an agreement or promise in lieu of damages.' There is no such thing here; no damages are called for. Merely altering the day of payment is neither forfeiture of any property, nor a penalty in damages for the breach of any agreement. * * * The tender of the interest which was made in August, 1867, being after the same fell due, can have no effect to avoid the consequences of the breach of the condition." In reference to the decision of the lower court, this Court, speaking through CHIEF JUDGE BARTOL, said: "Upon the question of the construction of the mortgage, and the bond or obligation of Richmond and Peers to enforce the payment of which the bill was filed, we entirely agree with the Circuit Court, and upon the reasoning contained in the opinion of that Court, sent up with the record, and the authorities therein cited, we are willing to rest our decision of that question. The object of the suit is to enforce the payment of the mortgage debt and interest, according to the terms of the contract; it is in no sense a proceeding to enforce a penalty or forfeiture." In the case of Walker vs. Cockey, 38 Md. 79, where the default was the failure of the mortgagor to insure the mortgaged property, this Court said through JUDGE MILLER: "We have no doubt failure by the mortgagor to insure according to the terms of his covenant in that respect, constituted such default as rendered execution of the power to sell rightful and proper. * * * The mortgagor agreed to and accepted this condition, and in reliance upon its being complied with, the mortgagee parted with her money. Under these circumstances a court of equity cannot relieve the mortgagor from what, by his own deed, he agreed should be the consequence of a failure to effect insurance for the stipulated sum, no matter whether that failure arose from neglect or inability to procure such insurance." In the case

of *Mobray* v. *Leckie,* 42 Md. 476, CHIEF JUDGE BARTOL, speaking for the Court, said: "There can be no doubt or question about the construction of the mortgage; its terms are plain and unambiguous, and expressly provide that in default of payment of the annually accruing interest, the whole debt shall be due and payable. This is a legal and valid stipulation; the defense relied on by the appellant that it is in the nature of a penalty or forfeiture which a court of equity will not enforce, is fully answered by *Schooley* v. *Romain,* 31 Md. 574. * * * The payment of interest into court after the suit was instituted was too late, and affords no ground of defense. By the terms of the mortgage the whole debt became due and payable, and the Circuit Court committed no error in decreeing that unless the same be paid, or brought into court to be paid to the appellee the property should be sold." In the case of *Gustav Adolph Building Association* v. *Kratz,* 55 Md. 394, under the clause of the mortgage consenting to a decree, the mortgagee filed a petition alleging default and praying for a decree appointing a trustee to sell the property, and the decree was accordingly passed, whereupon the mortgagor filed a petition alleging that he was not in default, and praying for an injunction to restrain the sale, and the injunction was ordered. On appeal the court said: "The covenant of the mortgagor was to keep the taxes paid as they fell due. This he did not do. * * * In *Walker* v. *Cockey,* 38 Md. 75, this Court held that a failure to keep the property insured, as provided for in the covenant in the mortgage, was a default which justified proceedings under the mortgage. The default in this case was a violation of the covenant, and for the same reason justified the trustee in advertising. * * * It is admitted that Rule 39 of the Circuit Court of Baltimore City allows one-half commissions to trustees in all cases where payment is made after sale has been advertised, but before it is made. The sale having been advertised, and properly so, the trustee was entitled to his commissions as a matter of right, and the disallowance was error and good ground of appeal." In the

case of *Condon* v. *Maynard*, 71 Md. 605, the Court said: "As the appellant expressly covenanted that a failure to pay the taxes would authorize an exercise of the power of sale contained in the mortgage, his objection that there has been no such breach justifying the sale cannot be sustained." In the case of *Union Trust Company* v. *Belvedere Company*, 105 Md. 523, JUDGE PEARCE said: "It is true that the tax upon the capital stock of the company was paid October 10th, 1906, by whom does not appear, but this payment after a consummated default, by whomsoever made, or upon whatever authority, cannot obliterate the default, or divest any right to sell founded thereon. We are, therefore, of the opinion that this default, followed by the proper demand of one-fourth in amount of the bondholders, entitled the Union Trust Company, as trustee, to a decree of sale under the mortgage, and that there was error in refusing such decree." And in the still later case of *Stewart* v. *McCaddin*, 107 Md. 318, JUDGE BURKE said: "There were two clear defaults on the part of the mortgagor: first, the failure to pay the interest which fell due February 7th, 1907, and secondly, failure to pay the taxes. * * * These defaults entitled the mortgagee to a decree for a sale of the mortgaged property under the terms of the mortgage." In support of this statement JUDGE BURKE cited all of the cases to which we have referred.

In the case at bar it is admitted that taxes on the property covered by the mortgage, to the amount of $156.63, had been due and payable from the first of January, 1920, and had been in arrear from the first of July, 1920. It is therefore clear that under the terms of the mortgage the mortgagor was in default; that in consequence thereof the whole mortgage debt had become due and payable, and that the mortgagee was entitled on August 4th to a decree appointing a trustee to sell the property. Green and wife accepted the deed for the property charged with full knowledge of the terms of the mortgage and of the consequences of a failure to comply with the conditions thereof, and it is equally clear, upon principle and

the authorities quoted, that after the decree for a sale of the property neither the tender of the interest and a part of the principal of the mortgage debt nor the payment of the taxes, could, as said by JUDGE PEARCE, operate to "obliterate the default, or divest any right to sell founded thereon."

The appellees rely upon the statement in *Phelps' Equity,* Sec. 195: "Equity never aids in enforcing a penalty, nor requires a forfeiture," but they overlook the further statement in that section: "So, in case of an agreement that the whole debt, presently due, shall be enforced, unless a stipulated installment thereof be paid by a named day, such payment, upon default in performing the condition will not be relieved against in equity." They also rely upon the statement of the court in *Condon* v. *Maynard, supra:* "Had these taxes been but a few days in arrear when Maynard advertised the property for sale, a different question might, perhaps, have been presented, because a court of equity is always reluctant to lend any aid towards oppressive contracts, especially when its intervention would, in effect, result in the enforcement of a forfeiture." What the court evidently had in mind was a delay of a "few days" in the payment of taxes, due to either neglect, fault or fraud of the *mortgagee,* where a court of equity might properly refuse to allow the mortgagee to take advantage of his own neglect or wrong. But here, as the court said in that case, no such question arises, as the mortgagor, or those claiming under her, had ample time within which they ought to have paid the taxes before the proceedings for the sale of the property were instituted.

It is also suggested in the argument of counsel for the appellees that the proceedings were instituted by the the mortgagee for the purpose of oppression. Upon the failure of a mortgagor in a mortgage like the one under consideration to pay the taxes within the time required by the mortgage, the mortgagee has the right to treat the whole mortgage debt as due, or to waive the default, and there is no legal or equitable

principle upon which his right to so elect can be made to depend upon the motive prompting his election.

While the sale of the property in question may result in a hardship to the appellees, under the settled principles of law and equity applicable to such cases, there is no avenue of escape for them from the consequences of their own default, or the default of those under whom they claim, except by payment of the whole mortgage debt, and such costs, expenses and commissions as they are liable for under the law and rules of the court below.

It follows that in Nos. 42 and 43 appeals the decree appealed from must be reversed, and that as The Neighborhood Corporation was not a party to the suit in the Court below, the appeal in No. 44 appeals must be dismissed.

> *In Nos. 42 and 43 appeals decree reversed, with costs, and in No. 44 appeals, appeal dismissed, with costs, and cause remanded for further proceedings.*