NYLEN, et al. *v.* GEERAERT, et ux.

[No. 156, September Term, 1966.]

*Decided March 10, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, OPPENHEIMER and McWILLIAMS, JJ.

*William V. Meyers,* with whom was *Leo Wm. Dunn, Jr.,* on the brief, for appellants.

*James H. Taylor* for appellees.

McWILLIAMS, J., delivered the opinion of the Court.

The deed of trust in this appeal provides that "in the event there is a default" in any payment of taxes, all principal and interest, at the option of the note holder, shall mature immediately and become due and payable. Taxes which became "due and payable" on 1 July 1965, "overdue and in arrears" on 1 October 1965 and interest bearing "from and after" 1 October

1965 were not paid by appellees until 31 January 1966. Appellants (the Trustees), claiming a "default" occurred on 1 October, began foreclosure proceedings on 27 January 1966. Appellees (the Geeraerts) contend they could not have been in default before 4 February 1966. The case came to us with an agreed statement of facts which, except for an irrelevant paragraph, is set forth verbatim:

"On the 24th day of May, 1965, the Appellees, Joseph L. Geeraert and Marcella E. Geeraert, his wife, executed a deferred purchase money promissory note in the principal amount of $349,475.76, bearing interest at the rate of 6% per annum, said principal and interest being payable in annual installments of $115,- 491.92, plus interest, with the first payment due on the 1st day of August, 1966, and annually thereafter until 1969, when the entire remaining unpaid principal balance together with interest became due and payable. The said note was payable to the order of Donbar Estates, Washington Corp., a Maryland Corporation, and at a later date was assigned to Edwards Engineering Corp., Mac Welson, President. The said note was secured by a deed of trust, made by the Appellees to the Appellants, as Trustees, securing Donbar Estates, Washington Corp., a Maryland Corporation, the land which was the subject of the deed of trust containing 42.2415 acres, all of which is more particularly described in the deed of trust which was recorded in Liber 3153 Page 44, one of the Land Records of Prince George's County, Maryland. Said deed of trust is made a part of this Agreed Statement of Fact.

"In accordance with the terms of the trust as stated on page 4 thereof, the said page recorded in Liber 3153, Page 47, the Appellees agreed to pay all taxes general or special, that may be assessed against the property or become due. In the event the said taxes were not paid when they were due, the Appellants (Trustees) had the option to accelerate the note and cause all principal and interest of the note still un-

paid, to immediately mature and become due and payable, or sell the property, or in the alternative, as stated in Paragraph 5 on Page 4 of the Trust, to pay the taxes and charge the same as an expense to the makers of the trust.

"It came to the attention of the Appellants herein, that the real estate taxes on the beforementioned property for the year 1965 had not been paid and by letter dated the 28th day of January, 1966, one of the Appellants, Edward W. Nylen, as Trustee, pursuant to instructions from the parties secured, notified the Appellees that the taxes had not been paid and that the holder of the note demanded acceleration and that if said moneys were not paid the said Trustees were instructed to advertise the property for public sale. A copy of said letter is made a part of the Agreed Statement of Fact.

"The Appellees failed to pay the deferred purchase promissory note in full as demanded and on the 27th day of January, 1966, suit to foreclose on the deferred purchase deed of trust was docketed and the publication advertising the same was commenced in the Prince George's Post, one of the newspapers in Prince George's County, Maryland, and the sale was set for the 8th day of March, 1966.

"On the 25th day of February, 1966, the Appellees filed in the Circuit Court for Prince George's County, Maryland their petition entitled 'Defendants Petition for Injunction to Stay Foreclosure Sale of Real Property.'

"In substance the Petition stated:

"1. That the Appellees executed the trust in question.

"2. That they were notified by letter dated January 28th 1966 that the taxes had not been paid and that the Appellants had accelerated in accordance with the terms of the trust.

"3. That they were the record owners of the property, but had conveyed a part of the property, namely

16.9003 acres, to Twinbrook Development Corporation and that this property had been rezoned from R-55 to R-18.

"4. That at the time that they conveyed the 16.9003 acres to Twinbrook Development Corporation, the Supervisor of Assessments, Transfer Office, in Prince George's County, Maryland, entered among its records the tax bill address of Joseph L. Geeraert and Twinbrook Development Corporation.

"5. That for the year 1965, tax bills were sent to the Appellees, but only for the property that was conveyed to Twinbrook Development Corporation, and this tax bill was in error in that it included part of the property which was still owned by the Geeraerts and not owned by Twinbrook, and that this error was corrected by the Appellees and they then paid the taxes on the 16.9003 acres.

"6. That the property was originally conveyed merely to Joseph Geeraert, and for the purposes of having the property in both he and his wife's name, he conveyed his interest to a straw party, who in turn reconveyed the property to Joseph L. Geeraert and Marcella E. Geeraert, his wife, and at that time, when these deeds were presented to the Treasurer's Office they were marked 'Tax levied and on record of this date January 5th, 1966, have been paid.'

"7. That the tax bills for the property, except for the 16.9003 acres, were sent to Donbar Estates, Washington Corp., and not forwarded to the Appellees.

"8. That after they received a letter from the Appellant, Nylen, they caused further examination of the records to be made and found that taxes had not been paid and that there was an additional $1900.00 due and owing, and that these additional moneys were paid on the 31st day of January, 1966.

"The Appellees admit that no taxes were paid on or before the 1st day of October, 1965, and that the balance of the taxes was not paid until the 31st day of January, 1966. They further admit, that they had

knowledge that the deferred purchase note was held by Mac Welson, as President of Edwards Engineering, and that he did nothing to hinder, delay or cause them not to know the taxes were due.

"The Appellees further admit that they made no attempt to pay the tax bills until January 5, 1966, even though they had knowledge that the tax bills were sent out. Both parties further admit that the Appellee, Joseph L. Geeraert is a knowledgeable and experienced home builder and developer of lands having built hundreds of homes in Prince George's County, and Montgomery County, Maryland, for the purpose of sale, and for a period in excess of twenty years has bought and sold property in Maryland and developed the same."

\* \* \*

"The questions presented to the lower Court were as follows:

"a) Is the individual who has a duty to pay the taxes in default if he has not paid the taxes on or before the 1st day of October?

"b) Is he in default if the property is advertised for a tax sale?

"c) Is he in default if the property is advertised for a tax sale and purchased by someone at the tax sale or

"d) Does default take place at some period of time after the 1st day of October when penalty accrues but before the Bill To Foreclose All Rights of Redemption have been filed?

"The lower Court ruled that the tax payer was not in default in accordance with the deed of trust for not paying the real estate taxes on or before the 1st day of October. It is from this ruling that the Appellants have noted their appeal and phrase the issue before this Court."

Since we must undertake the definition of "default," it is perhaps fortunate that, to some extent, we share one of the

prerogatives of Humpty Dumpty, who was made to say, "When I use a word it means just what I choose it to mean—neither more nor less." [1] Precise definition, of course, is impossible. "Default" like "negligence" is a purely relative term and means neither more nor less than not doing what is reasonable under the circumstances—not doing something one ought to do, having regard to the relationship one occupies toward other persons in a transaction. 26A C.J.S. *Default* 126. When used in respect of an obligation created by contract, the ordinary meaning is failure of performance; when used with reference to an indebtedness, it means simply non-payment. *Bradbury v. Thomas,* 27 P. 2d 402, 405, 135 Cal. App. 435 (1933). Many words, including "default," are used imprecisely when adjoined with "taxes." In the decisions of many courts will be found expressions such as "overdue taxes," "taxes in arrears," "taxes due and in arrears," "taxes due and owing," "delinquent taxes," "legally demandable taxes" and "past due taxes." In almost every instance the court's opinion and the attending circumstances will have to be studied carefully before the exact meaning of the words used can be discovered. It should be remembered, of course, that here we are dealing not with a taxpayer's relationship to local government but only with the mutual rights and duties of parties to a contract. Absent a "default" in the payment of taxes the appellants, being powerless to accelerate the maturity of the debt, were properly enjoined from proceeding with the foreclosure. Since the deed of trust offers no clue as to what the parties meant by "default" we must look for guidance elsewhere.

Code, Art. 81, § 48 (a), which was in effect when the deed of trust was executed, is as follows:

> "All ordinary State, county, incorporated city or town, and taxing district taxes, are due and payable without interest as of the first day of July in each taxable year; these taxes are overdue and in arrears on the first day of the succeeding October, and from and after this day of October 1 they shall bear interest

---

1. Lewis Carroll, *Through the Looking Glass.*

at the rate of ½ of 1 per centum for each month or fraction thereof until paid."

In *Lotterer v. Leon,* 138 Md. 318, 113 Atl. 887 (1921) the mortgagor covenanted to pay the taxes when they were "legally payable." The mortgage further provided that "in case of any default being made in any covenant * * * [the mortgage debt] shall be deemed due and payable." As required by the statute then in force taxes levied in November were due on 1 January. On 1 July the taxes became "in arrears" and were thereafter subject to interest. Judge Thomas, for the Court, after reviewing the earlier cases, said:

"In the case at bar it is admitted that taxes on the property covered by the mortgage, to the amount of $156.63, had been due and payable from the first of January, 1920, and had been in arrear from the first of July, 1920. It is therefore clear that under the terms of the mortgage the mortgagor was in default; that in consequence thereof the whole mortgage debt had become due and payable, and that the mortgagee was entitled on August 4th to a decree appointing a trustee to sell the property. Green and wife accepted the deed for the property charged with full knowledge of the terms of the mortgage and of the consequences of a failure to comply with the conditions thereof, and it is equally clear, upon principle and the authorities quoted, that after the decree for a sale of the property neither the tender of the interest and a part of the principal of the mortgage debt nor the payment of the taxes, could, as said by Judge Pearce, operate to 'obliterate the default, or divest any right to sell founded thereon.' " *Id.* at 327-28.

The covenant in *Findlay v. Darnell,* 143 Md. 291, 122 Atl. 247 (1923) required taxes to be paid "when legally demandable." The applicable statute made taxes "in arrears" on 1 October and thereafter subject to the payment of interest. The first insertion of the notice advertising the foreclosure sale was made prior to 1 October. The Court's language seems to indicate that default was deemed to have occurred on 1 October,

the date interest began to run. The sale was set aside because of the premature advertisement. Chief Judge Boyd, for the Court, said:

"It is contended that at least after the interest became due (October 1st) there was a default, and the sale was not made until October 17th. But we know of no authority which justifies a sale to be made based on an advertisement which began some time prior to October 1st. Just when the first advertisement appeared is not shown, but it was apparently some time about or after the middle of September. If, as we can have no doubt, there was no default as to the taxes before October 1st, the twenty days notice required by the mortgage in order to sell must have been after the default, and it could not be anticipated and begun before the time of default. The language of the mortgage would seem to be clear as to that, as it only provides for a sale in case of default and it cannot be contended that a mortgagee has the right to advertise the property on which his mortgage is, in anticipation that there is going to be a default." *Id.* at 301.

Where the deed of trust (or mortgage) contains a provision substantially like the one before us (using the word "default") we think, as our predecessors seem to have suggested, that the obligor (or mortgagor) is in "default" in respect of the payment of taxes if he allows them to remain unpaid after 1 October, the day they begin to bear interest. Except in rare instances the failure of the mortgagor or obligor to pay the taxes during the 90 day period between 1 July and 1 October would not impair the security of the mortgagee or obligee. After 1 October the impairment is minimal, perhaps, yet this is precisely what the covenant is designed to prevent. As we said in *Kleiman v. Kolker,* 189 Md. 647, 651, 57 A. 2d 297 (1948) acceleration clauses are "intended to stimulate the mortgagor to pay interest, taxes and other payments promptly."

The trial judge could not "bring * * * [himself] to deny this injunction." One can share his sympathy for the plight of the appellees but one cannot disregard the rights of the appel-

lants, however strict and uncompromising their attitude may be. In *Doeller v. Mortgage Guarantee Co.*, 166 Md. 500, 171 Atl. 856 (1934) the mortgagor delayed paying interest only three days beyond the due date, yet the Court, speaking through Judge Offutt, said:

"The appellant contends, and we think properly, that, if the mortgagor delayed paying the interest beyond the day on which it became due and payable, the entire mortgage debt became due and payable, and that the length of the delay was not material. *Wiltsie on Foreclosure of Mortgages*, sec. 43; 41 *C.J.* 845. For, if the default existed at all, it was by agreement of the parties a complete, indivisible, and consummate thing, and unless affected by the doctrine of waiver, its mere duration would not affect its qualities, incidents, or effect. While the strict enforcement by the mortgagee of the rights flowing from it may appear, and, indeed, may be, harsh and oppressive, that consideration cannot be regarded as material in such a proceeding as this, where the default rests upon the deliberate agreement of the parties, where the right to the remedy and the remedy itself are definitely fixed by statute, and where the duty of the court to recognize the remedy and the mortgagee's right thereto is mandatory." *Id.* at 507-508.

The order of 8 March 1966 making the injunction permanent will be reversed and the case will be remanded for such further foreclosure proceedings as may be required by the appellants.

*Order reversed.*
*Case remanded for further proceedings.*
*Costs to be paid by appellees.*