FONTANA, ET UX. *v.* WALKER, ET AL.

[No. 169, September Term, 1967.]

*Decided April 4, 1968.*

*Motion for rehearing filed April 30, 1968; denied May 9, 1968.*

The cause was argued before HAMMOND, C. J., and HOR-NEY, MARBURY, McWILLIAMS and FINAN, JJ.

*Mrs. Virginia Fontana,* in proper person, for appellants.

No brief filed for appellees.

FINAN, J., delivered the opinion of the Court.

This is an appeal from an order of the lower court denying the appellants' exception to the trustees' report of sale following foreclosure of appellants' property.

The deed of trust securing a $15,000 20-year note was executed on February 19, 1957, between the appellants and trustees for the Second National Bank of Washington, D. C. which later became the First National Bank. Monthly payments of $150 were later reduced to $115 on October 19, 1961 by a formal extension agreement. Included in the deed of trust were the usual acceleration and power of sale clauses.

The record reveals a history of arrearages in the payment of the mortgage, an element which undoubtedly contributed to the bank's increased reluctance to keep the Fontana note on its books. To this was added the liability for 1965-1966 and 1966-1967 real estate taxes, totalling $1,011, which the bank was forced to advance on December 7, 1966.

As of December 19, 1966, the Fontanas were three months back on their payments, in addition to the tax liability which was added to the principal amount then due. The October and November payments had been drawn on a closed account, and the checks returned to the Fontanas. This had been followed by a letter from Mr. Kahn of the bank's real estate department to the Fontanas, advising them of the arrearages and threatening foreclosure unless the entire debt was paid by November 28. On December 22, Mrs. Fontana called Mr. Kahn on the telephone and informed him that Mr. Fontana was seriously ill and about to enter the hospital for surgery. In light of this unfortunate development, Mr. Kahn, for the bank, agreed to accept by December 29, $230 (two monthly payments) in lieu of the three payments then due. Furthermore, monthly pay-

ments would be increased starting January by $100, to cover partial return on the tax debt, and $47, as an advance into escrow for future taxes. Mr. Kahn testified that Mrs. Fontana agreed to the modification. A conversation held at this juncture concluded with Mr. Kahn reminding Mrs. Fontana that foreclosure papers had been drawn but would remain in his office so long as payments pursuant to the modified agreement were regular. On December 30, one day after the agreed upon date for payment, Mrs. Fontana sent in a check for $230.

The next payment was due on January 19. On the 16th, Mrs. Fontana again called Mr. Kahn and explained that because of the seriousness of her husband's incapacitation, it having become necessary to amputate a leg, medical and rehabilitation expenses were very high and the January payment would be late. Although Mrs. Fontana alleged at the hearing that Mr. Kahn assured her that arrangements could be worked out, the bank denied any such agreement. The bank sent a letter on the 27th of January stating that the mortgage was again in arrears, and that if arrangements were not made by February 3, the bank would proceed with foreclosure. This letter made it clear that the Fontanas would be expected to pay overdue installments, the amount advanced for taxes as well as any late fees before the bank would consider reinstating the loan, and that the bank was unwilling to accept anything less. Mrs. Fontana stated that she did not receive this letter, however she also testified that during this period of time she did not regularly open her mail. On February 2, Mrs. Fontana personally appeared at the bank and tendered the January payment, which was refused. Shortly thereafter foreclosure was initiated.

One further thread must be woven into this fabric. It appears that sometime in July of 1965, the Fontanas became entitled to receive $5,600 compensation from the State Roads Commission resulting from a marginal taking of the property. Mrs. Fontana argues that the Bank agreed to treat that fund as additional "equity" for the deed of trust. Nevertheless, the money was either not accepted by, or never turned over to the bank, and the record otherwise remains disturbingly silent with respect to this transaction. There is a suggestion to be found in the testimony of Mr. Kahn, a representative of the bank, that the pro-

ceeds from the State Roads Commission taking were being held up because of tax litigation, and the record does reveal that the federal government on January 1, and again on February 16, 1967, filed tax liens for income taxes due by Mr. and Mrs. Fontana totalling $944.94. In oral argument before this Court Mrs. Fontana stated that the State Roads Commission still held the proceeds from the marginal taking.

Unquestionably, on February 13, 1967, the date foreclosure was initiated, the deed of trust was in arrears on several counts. By the terms of the deed, the trustees were given authority to accelerate the payments and sell the property (1) in the event default occurred in payment in any installment, as and when the same became due; (2) upon default by the debtors in paying prior liens including taxes; or (3) where the secured party elected to advance the funds necessary to liquidate a prior lien and the debtors then failed to immediately indemnify the secured party. As of February 13, 1967 default had occurred on all three of the aforegoing provisions.

The record reveals beyond dispute that there was default in the monthly payments and the modifications agreed upon by the parties. Furthermore, pursuant to Code (1965 Repl. Vol.) Art. 81, Sec. 48 (a), interest on the county and state real estate taxes owed for 1965-1966 commenced October 1, 1965 and interest for the taxes due for the year 1966-1967 commenced October 1, 1966. Applying the rule set forth by Judge McWilliams speaking for the Court in *Nylen v. Geeraert,* 246 Md. 4, 12, 226 A. 2d 878, 882 (1967), default for nonpayment of taxes occurs "the day they begin to bear interest." It is further clear that the payment of the balance due and owing on the mortgage was accelerated by the election of the secured party to advance the funds necessary to liquidate the tax debt which was not immediately repaid by the debtors.

Needless to say, the purpose of an acceleration clause is solely to protect the mortgagee or principal creditor in a deed of trust. If he has good reason to believe that a breach of the debtor's covenant to pay taxes is so serious as to impair his security, he has a right to foreclose. *Kleiman v. Kolker,* 189 Md. 647, 651, 57 A. 2d 297, 299 (1948).

The unfortunate position in which the appellants find themselves is partially attributable to their inability or unwillingness to retain counsel at the hearing in the court below on the exceptions to the trustees' report of sale. Mrs. Fontana apparently secured the services of an attorney some short time prior to the hearing, but he none too graciously withdrew the day before the hearing by assuring Mrs. Fontana that she, knowing the facts as she did, would be more effective on her own. As a result, Mrs. Fontana defended her position pro se and appeared before this Court without counsel.

It is possible that a better case for setting aside the sale could have been constructed had an attorney presented the appellants' case. Perhaps the issues of estoppel or waiver of default or the significance to the case, if any, of the missing State Roads Commission money might have been established by an attorney making a thorough investigation and proper presentation. For this reason, the appellants raise as their only issue on appeal the alleged error of the lower court in failing to grant a continuance until legal counsel was obtained.

The granting or denial of a continuance or postponement is within the sound discretion of the trial court. *King v. Rockville,* 249 Md. 243, 238 A. 2d 898 (1968); *Thanos v. Mitchell,* 220 Md. 389, 152 A. 2d 833 (1959); *Plank v. Summers,* 205 Md. 598, 605, 109 A. 2d 914 (1954). This rule applies even where the ground for the requested continuance is the withdrawal of movant's counsel from the proceedings. See *Clarke Baridon, Inc. v. Union Asbestos & Rubber Co.,* 218 Md. 480, 147 A. 2d 221 (1958); Annot., 48 A.L.R.2d 1155 (1956). Rule 527 a 1 permits the court to grant a continuance on its own motion, and in the absence of authority to the contrary, we assume that the discretionary power of a court acting sua sponte is no different than that exercised pursuant to a motion by a party.

In fairness to the lower court it should be noted that at the opening of the hearing on the objections to the trustees' report of sale no one was present in court representing the Fontanas. The court denied the exceptions to the sale and ratified it. However, just as the proceedings concluded, Mrs. Fontana appeared in court and explained that she had gone to the wrong court room, whereupon Judge Powers stated that he would con-

sider a motion to strike the order of ratification and dismissal of the exceptions so that Mrs. Fontana would have an opportunity to be heard. Thereafter Mrs. Fontana took the witness stand and gave her version of the transactions with the bank. It was only after hearing Mrs. Fontana and two rebuttal witnesses, whom Mrs. Fontana cross-examined, that the court dismissed the exception to the trustees' report of sale and granted ratification; some 44 pages of testimony were transcribed.

We are of the opinion that the court did not abuse its discretion by refusing to grant a continuance on its own motion upon realizing that the appellants were not represented by counsel. The record before the lower court sufficiently established a default. Furthermore, the exceptions did not set up any formal modification of the deed of trust or any circumstances tending to establish a waiver or estoppel. The hearing itself produced further evidence in the form of letters from the bank to the Fontanas, sufficient to inform the Fontanas of default and impending foreclosure. Under these circumstances, the court did not act with impropriety in failing to postpone the case until the appellants were represented by counsel.

In *Plank v. Summers, supra,* a continuance was requested to allow for the proper introduction of evidence showing the value of medical and hospital services in a tort action. Judge Henderson, speaking for the Court, held that counsel requesting the continuance, although acting with diligence, had been taken by surprise, and that the lower court should have granted the continuance, stating: "To try the case without this basic evidence was like the play of Hamlet with Hamlet left out." 205 Md. at 605, 190 A. 2d at 917. The case is readily distinguishable from the case at bar. In the instant case there was no surprise and we had the benefit of Portia.

*Order of ratification affirmed, with costs.*