484 A.2d 1043

**Henry M. EBERLY, et ux.**

**v.**

**Larry S. BALDUCCI and Joseph P. McMahon, Trustees.**

**No. 378, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Dec. 11, 1984.

Certiorari Granted April 9, 1985.

Joseph F. McBride, Silver Spring, for appellants.

No brief or appearance by appellees Counsel.

Argued before WILNER, BISHOP and GARRITY, JJ.

BISHOP, Judge.

Henry and Delores Eberly (the mortgagors), appeal an order of the Circuit Court for Prince George's County (Robert Mason, J.) which dismissed their petition for "Ex Parte and/or Interlocutory Injunction" to prohibit a deed of trust foreclosure action on the ground that the injunction was barred by the doctrine of *res judicata.* The basis of this holding was our February 15, 1983, unreported decision in *Balducci v. Eberly,* No. 822, September Term, 1982 (filed

February 15, 1983)[1] which reversed and vacated a Circuit Court order enjoining foreclosure on the deed of trust. Appellee did not file a brief; therefore, the following factual background and procedural history is not disputed.

On February 25, 1975, the mortgagors executed a deed of trust on real property located in Prince George's County to secure payment of two notes totaling $80,000 with an interest rate of seven percent per annum. The appellees, Larry S. Balducci and Joseph P. McMahon were named as trustees. Under the terms of that agreement, the mortgagors promised to pay the indebtedness and "all taxes, assessments, water rates and other governmental or municipal charges . . . ." In addition, that agreement stated that

should default occur in the payments or other terms, covenants or conditions of prior deeds of trust or other liens, including taxes and assessments on the herein described property then the debt described herein shall at the option of the holder of said note, immediately become due and payable in full, and the Trustees herein shall have the power to sell and convey as set forth herein; or the holder of said note may make such payments or pay such charge and the same shall be added to and be deemed to be secured by this Deed of Trust.

The controversy which is the subject of this appeal began when the mortgagors received a letter, dated December 29, 1981, from trustee Joseph P. McMahon which called "for an acceleration under the existing deed of trust because of . . . [their] failure to make payments as required thereunder." The total amount claimed to be due upon acceleration was $71,524.31. The mortgagors responded by submitting statements to Mr. McMahon which showed that their principal and interest payments were, in fact, current.

Mr. McMahon then sent another letter to the mortgagors, dated January 27, 1982, in which he stated that although

---

1. Rule 1092 c permits the use of unreported opinions under the doctrine of the law of the case and *res judicata.*

they were not in default regarding the payments, the taxes had not been paid for 1980–81 or 1981–82. In that letter, Mr. McMahon stated that

I would immediately advise that you call me in order that we can resolve either by you paying off the trust or for modification in the terms and conditions of the trust without the need for foreclosure on my part. I would expect that this matter be resolved by February 5, 1982, or else I shall have to proceed with foreclosure.

Apparently attempting to resolve the matter by February 5, 1982, without paying off the trust or modifying its terms and conditions, the mortgagors paid the taxes due on the property on February 4, 1982. On March 24, 1982, the trustees filed in the Circuit Court for Prince George's County an order to docket a foreclosure action. *See* Rule W 72 c 1. All principal and interest payments and taxes were current at that time.

On April 6, 1982, the mortgagors filed a motion for "Ex Parte and/or Interlocutory Injunction," pursuant to Rule W 76 b, seeking to enjoin the foreclosure action. On that same date, Judge Levin signed an order enjoining the foreclosure until April 13, 1982, the date that a hearing was scheduled for the petition for interlocutory injunction. On that same date Judge Levin also signed an order granting interlocutory injunction "until such time as a hearing is held on the merits hereof." There is no indication that an adversary hearing was held before that order was signed. *See* Rules BB 70 c and BB 74.

On April 13, 1982, the Circuit Court for Prince George's County (Robert Mason, J.) held a hearing to consider the propriety of continuing the injunction. The Court heard arguments from counsel for both parties on the issues of default, cure of default, waiver, and estoppel. No testimony was taken, but the deed of trust and the letters from Mr. McMahon were submitted to the Court. The Court granted the injunction and on May 5, 1982, signed an order which

made the injunction permanent as to all defaults alleged to have occurred prior to the date of the hearing.

The trustees appealed this order and we reversed because the applicants for the injunction did not "produce any evidence indicating the necessity or propriety of continuing the injunction." *Balducci v. Eberly*, No. 822, September Term, 1982 (filed February 15, 1983) slip op. at 9. In that opinion we stated that the argument of counsel in the Circuit Court was "never stipulated or proven by testimony or evidence submitted," slip op. at 6, and therefore, we could not assess the sufficiency of the evidence since no evidence was submitted. slip op. at 7.

Thereafter, the trustees resumed foreclosure and the mortgagors filed another petition for "Ex Parte and/or Interlocutory Injunction" to enjoin that foreclosure. On May 2, 1983, the Circuit Court for Prince George's County (Robert Mason, J.) held a hearing on the merits at which, according to the trial court, the mortgagors were "well armed with testimonial and documentary evidence to support their position." Nevertheless, the trial court dismissed the petition on the ground that it was barred by the doctrine of *res judicata* because we had reversed the May 5th order enjoining the foreclosure action.

Now, the mortgagors appeal that order and raise the following questions:

    I. Did the lower court err in construing the February 15, 1983, ruling of the Court of Special Appeals as final, conclusive and on the merits, thus barring the appellants from seeking injunctive relief because of the doctrine of *res judicata?*

    II. Was there the necessary default under the terms of the deed of trust to activate an acceleration clause?

    III. Did the curing of all tax deficiencies by the appellants before the appellees' initiation of foreclosure bar the appellees from proceeding with foreclosure?

    IV. Does the continued acceptance of the monthly principal and interest payments by the appellees constitute

a waiver of the previously declared default, and bar the appellees from foreclosure on those grounds?

## I.

In Maryland and elsewhere, the doctrine of *res judicata* has been defined in myriad cases as:

> [A final] judgment [on the merits] between the same parties and their privies is a final bar to any other suit upon the same cause of action, and is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit, where the court had jurisdiction, proceedings were regular, and his omission was due to his own negligence.

*Annapolis Urban Renewal v. Interlink,* 43 Md.App. 286, 290, 405 A.2d 313 (1979). (quoting *Alvey v. Alvey,* 225 Md. 386, 390, 171 A.2d 92 (1961)).

In *Annapolis Urban Renewal,* we held that a judgment entered after the granting of a motion raising preliminary objection on the grounds of sovereign immunity is a judgment on the merits for the purposes of *res judicata.* 43 Md.App. at 291, 405 A.2d 313. We stated that when a court dismisses an action

> because of jurisdictional, procedural, or venue problems, it is acting for reasons that do not go to the substance of the case. But, when a court decides that it cannot hear the case because of a legal defense such as sovereign immunity, it is deciding that, as a substantive matter, the plaintiff cannot maintain his cause of action.

*Id.* at 294, 405 A.2d 313.

■ The order at issue in the case *sub judice* was reversed on appeal because the trial court did not receive any evidence. This error in procedure was subsequently explained at the hearing on the mortgagors' second petition to enjoin the foreclosure when the trial judge said that he had treated the argument of counsel at the first hearing as

based upon a "stipulation" although that "magic word" apparently was not used.

The circuit court held that the mortgagors' second petition for injunctive relief was barred by *res judicata* because they had been given an opportunity to litigate their claim and this court had finally decided the case in the trustees' favor. *Acting Director v. Walker*, 39 Md.App. 298, 301, 385 A.2d 806 (1978), *aff'd.*, 284 Md. 357, 396 A.2d 262 (1979); *Whittle v. Bd. of Zoning Appeals*, 211 Md. 36, 49, 125 A.2d 41 (1956); *Snodgrass v. Stubbs*, 192 Md. 287, 291, 64 A.2d 130 (1949). We do not agree. Our decision in the prior appeal was not intended to prevent the mortgagors from presenting evidence to sustain their burden regarding the propriety of granting the injunction; we simply held that no interlocutory or permanent injunction could be issued based upon that record.

Before granting the injunction, the court heard arguments from counsel for both parties. They discussed the facts of the case, reviewed the documents at issue, and indicated that there was no real dispute regarding them. Furthermore, the parties discussed the applicable law and identified the cases which they considered to be controlling. The court then took a recess to review those cases and upon returning to the bench stated

> All right. I have read the cases, and I am going to make a ruling, and I will say now that I think the ruling is very appealable. I am going to grant the injunction.

In short, the court ruled before receiving any evidence in the case because it thought that the parties were proceeding upon a stipulation.

The trustees appealed contending the chancellor erred by holding that

(1) The mortgagors were not in default because they paid the real estate taxes after the date due but prior to the date of the scheduled foreclosure sale; and

(2) The mortgagors were never notified to make payments to anyone other than the bank acting as the collection agent for the noteholders.

After reviewing the record generated in the case, or the lack thereof, we *nostra sponte* reversed the orders continuing the ex parte injunction because "the chancellor had no facts presented to him by the moving party, upon whom the burden is placed, sufficient to support the holding." slip op. at 1. The language in our prior opinion which indicates that the mortgagors did not sustain their burden of proof as applicants for the injunction must be considered in the context of the facts of the case and as a part of the entire opinion taken as a whole. The basis of our reversal was that the prior hearing consisted of only argument of counsel, not testimony or evidence; we reversed the order because no evidence was submitted to the trial court. slip op. at 5–6, 7–8. We concluded, therefore, that we could not "assess evidentiary sufficiency ... when no evidence was submitted." slip op. at 7.

To hold that the reversal of that order, on the grounds that no evidence was presented below, constitutes a *res judicata* bar would be an unreasonable application of that doctrine. The substantive issues of this dispute have not been decided. No final determination has been made as to whether the failure to pay taxes permits acceleration of the entire balance due under this deed of trust. Similarly, there was never a decision on the legal issue of whether the payment of the taxes prior to foreclosure cures the default and bars the foreclosure action. This issue was not even addressed by the chancellor at the first hearing who apparently determined only that the noteholders were not "out anything." According to the chancellor, "[T]hey have their money, everything. They have accepted it."

Finally, we never addressed the question of whether the trustees have waived the default by continuing to accept the payments. This, however, was apparently the basis of

the chancellor's determination. We note in our prior opinion that "the trial judge seems somehow to have amalgamated the failure to pay taxes with the payments of interest and principal to the bank in reaching his conclusion." slip op. at 6. We could not address this legal issue, however, since there was no evidence presented to show that the payments had been made and accepted.

■ The court below did not make a determination on the merits of the case in the second hearing, but it did receive the evidence necessary to resolve these issues. We will resolve this dispute to avoid the delay and expense of further proceedings. Rule 1085.

## II.

The mortgagors contend that the trustees had no right to invoke an acceleration in this case based upon default in the payment of taxes because there was no clause to that effect in the deed of trust. *Better v. Williams*, 203 Md. 613, 617, 102 A.2d 750 (1954). This contention ignores the plain language of the deed of trust clause which states, in pertinent part, that

should default occur in the payment ... [of] other liens, including taxes and assessments on the herein described property, then the debt described herein shall at the option of the holder of said note, immediately become due and payable in full, and the Trustees herein shall have the power to sell and convey....

## III. & IV.

■ It is established law in Maryland that "breach of a covenant in a mortgage or deed of trust to pay taxes when due is a default which permits acceleration of the secured debt, and sale of the encumbered property by foreclosure." *Saunders v. Stradley*, 25 Md.App. 85, 96, 333 A.2d 604 (1975). In *Fontana v. Walker*, 249 Md. 459, 240 A.2d 268,

*cert. denied,* 393 U.S. 927, 89 S.Ct. 262, 21 L.Ed.2d 263 (1968), the Court of Appeals explained that

> the purpose of an acceleration clause is solely to protect the mortgagee or principal creditor in a deed of trust. If he has good reason to believe that a breach of the debtor's covenant to pay taxes is so serious as to impair his security, he has a right to foreclosure.

■ The mortgagors were in default in the case *sub judice* because they failed to pay the taxes on the property when they were due. When the trustees filed the foreclosure action based upon default in the payment of taxes, however, the taxes had been paid several weeks earlier. The mortgagors assert that since the tax deficiency was cured prior to commencement of the foreclosure action the trustees are barred from foreclosure, and they are entitled to enjoin the action. We have not found any Maryland law which is precisely on point.

In *Lotterer v. Leon,* 138 Md. 318, 113 A. 887 (1921), the court reversed an order enjoining a mortgage foreclosure action because the mortgagor breached the agreement by failing to pay taxes. 138 Md. at 327, 113 A. 887. It should be noted, however, that the taxes still had not been paid when the foreclosure action was commenced.

> The mortgagor covenanted to pay "all taxes," etc., "levied and assessed" on the property "when legally payable." The undisputed evidence shows that taxes to the amount of $156.63 were payable on the 1st day of January, 1920, and had been in arrears from the 1st day of July, 1920, when the decree of August 4th was obtained, and the mortgage expressly provided that "in case of any default being made in any covenant or condition" of the mortgage the whole mortgage debt thereby intended to be secured "shall be deemed due and payable," and sale of the mortgage property "may be made by the trustee" named in the decree.

*Id.* at 323, 113 A. 887.[2]

According to the *Lotterer* court, "after the decree for a sale of the property neither the tender of the interest and a part of the principal of the mortgage debt nor the payment of the taxes, could . . . operate to "obliterate the default, or divest any right to sell founded thereon." *Id.* at 328, 113 A. 318. Finally, the court noted that "the mortgagor, or those claiming under her, had ample time within which they ought to have paid the taxes before the proceedings for the sale of the property were instituted." *Id.*

The court in *Nylen v. Geeraert*, 246 Md. 4, 226 A.2d 878 (1967) also reversed an order enjoining foreclosure in a case regarding default in the payment of taxes. 246 Md. at 13, 226 A.2d 878. In that case, the court defined when a mortgagor is in "default" regarding the payment of taxes:

> Where the deed of trust (or mortgage) contains a provision substantially like the one before us (using the word "default") we think, as our predecessors seem to have suggested, that the obligor (or mortgagor) is in "default" in respect of the payment of taxes if he allows them to remain unpaid after 1 October, the day they begin to bear interest.

*Id.* at 12, 226 A.2d 878. As in *Lotterer, supra,* however, the taxes had not been paid at the time of foreclosure. In *Nylen*, "Taxes which became 'due and payable' on 1 July 1965, 'overdue and in arrears' on 1 October 1965 and interest bearing 'from and after' 1 October 1965 were not paid by the appellees until 31 January 1966." 246 Md. at 5–6, 226 A.2d 878. By the time the taxes were paid,

---

**2.** This Court in *Saunders v. Stradley,* 25 Md.App. 85, 333 A.2d 604 (1975) stated that

> Foreclosure for breach of a covenant to pay taxes when legally demandable was held in *Lotterer v. Leon,* 138 Md. 318, 113 A. 887 (1921), to have been erroneously enjoined below, even when the taxes were promptly paid after notice.

25 Md.App. at 96, 333 A.2d 604. These taxes apparently were not paid prior to commencement of the action.

however, foreclosure proceedings had been commenced on 27 January 1966. *Id.* at 6, 226 A.2d 878.

The same chronology of facts appears in *Saunders v. Stradley*, 25 Md.App. 85, 333 A.2d 604 (1975)—commencement of foreclosure proceedings on December 10, 1973, payment of taxes on December 26, 1973. 25 Md.App. at 86–87, 333 A.2d 604. Applying the rules stated in the cases cited above, the Court in *Saunders* held that

> Because Mrs. Stradley, the mortgagor, had failed to pay the taxes when due, the mortgage held by Mr. and Mrs. Saunders was in default when the foreclosure proceeding was commenced. The court should not have enjoined the assignee from foreclosing. We shall reverse the decree, and remand the case for entry of an order dismissing the petition to enjoin the sale, after which the assignee may proceed with foreclosure.

*Id.* at 98, 333 A.2d 604.

■ None of the cases, however, and no other Maryland case that we have found addresses the issue before us now, a situation in which the delinquent taxes have been paid prior to commencement of the foreclosure proceedings.[3] Other jurisdictions have considered the issue, and have fashioned the rule that payment of the delinquent taxes before commencement of the foreclosure action bars accel-

---

**3.** In *Stewart v. McCaddin*, 107 Md. 314, 68 A. 571 (1908), the Court stated that a mortgage foreclosure sale should not have been enjoined because "[t]here were two clear defaults on the part of the mortgagor; first, the failure to pay the interest which fell due February 7th, 1907; and secondly, failure to pay the taxes." 107 Md. at 318, 68 A. 571. There were several properties involved, and several years of delinquent taxes alleged. Apparently the mortgagor paid the delinquent taxes on some of the properties for some of the years prior to the foreclosure. *Id.* at 316, 317, 68 A. 571. It is clear, however, that some of the taxes due were not paid until after the action had been commenced; the action was commenced on April 20, 1907, and the mortgagor's answer stated that on April 25, 1907 he had paid the taxes on the mortgaged property for the year 1907. *Id.* at 316, 68 A. 571. The Court did not address the question of whether a default in the payment of taxes could be cured by payment prior to foreclosure, but rather simply concluded that there had been a default in the terms of the mortgage regarding the payment of taxes. *Id.* at 318, 68 A. 571.

eration and foreclosure. *Clark v. Equitable Life Assurance Society of U.S.*, 281 A.2d 488, 489 (Del.Supr.1971); *Kaminski v. London Pub., Inc.*, 123 N.J.Super. 112, 301 A.2d 769, 771 (1973); *Eisen v. Kostakos*, 116 N.J.Super. 358, 282 A.2d 421, 425 (1971); *but see, Frisard v. Heisser*, 378 So.2d 127, 129 (La.App.1979), *cert. denied*, 381 So.2d 1231 (La.1980); *see, Jeffrey v. Seven Seventeen Corp.*, 461 A.2d 1009, 1011 (Del.Supr.1983).

In *Jeffrey*, the lender filed a mortgage foreclosure action against the borrower on May 8, 1981 for failure to pay several years of real estate taxes required to be paid by the borrower under the terms of the mortgage. 461 A.2d at 1010. On May 13, 1981, five days after the commencement of the foreclosure proceedings, the borrower paid the delinquent taxes. According to the Supreme Court of Delaware,

> Borrower erroneously asserts that this case falls within the rule of *Clark v. Equitable Life Assurance Society, supra*. In *Clark*, this Court adopted the majority rule that payment of delinquent taxes before the commencement of a foreclosure action forestalls acceleration of installments for nonpayment of taxes. Here, since the tax payment followed foreclosure, payment is no bar to foreclosure. *Clark v. Equitable Life Assurance Society*, 281 A.2d at 489; *Fontana v. Walker, supra*.

461 A.2d at 1010–11.

We find the reasoning of the Delaware and New Jersey cases cited *supra* to be persuasive.

■ In addition, we note that in the instant case not only were the delinquent taxes paid weeks before the foreclosure action was instituted, but the trustees continued to accept the monthly principal and interest payments after the default and subsequent cure by payment of the taxes, and they continue to accept those payments up to the time of this appeal. *See Jacobs v. Swift*, 8 Kan.App. 857, 56 P. 1127, 1129 (1899) (assuming that there was a default, acceptance of interest payments for more than two years from time of default until instituting foreclosure action

waives right to forfeiture), *but see Browne v. Nowlin,* 117 Ariz. 73, 570 P.2d 1246, 1248 (1977) (case in which delinquent taxes were not paid at the time suit was filed, court stated that mortgagees' waiver of default in payment of principal and interest, by accepting delinquent payment, does not constitute a waiver of right regarding tax default).

In *Fontana,* 249 Md. at 461, 240 A.2d 268; *Lotterer,* 138 Md. at 321, 113 A. 887, and *Saunders,* 25 Md.App. at 87, 333 A.2d 604, monthly principal and interest payments were rejected when the mortgagees elected to accelerate the note and foreclose upon default in the payment of taxes. In the case *sub judice,* however, the trustees attempt both to recognize the viability of the note, by accepting monthly payments, and also to reject it by declaring it in default. They cannot do both. The *unconditional* acceptance by the trustees of the principal and interest payments *following notice to them that the taxes had been paid* is inconsistent with a claim that a default exists. That acceptance constitutes an acquiescence that the default has been cured.

JUDGMENT REVERSED; CASE REMANDED FOR THE ENTRY OF AN INJUNCTION IN ACCORDANCE WITH THIS OPINION;

COSTS TO BE PAID BY APPELLEES.