[Civ. No. 1071. Fourth Appellate District.—November 24, 1933.]

T. D. BRADBURY et al., Appellants, v. HARRIET F. THOMAS, Respondent.

Leslie S. Bowden and Horace W. Danforth for Appellants.

Harvey H. Atherton for Respondent.

JENNINGS, J.—Plaintiffs instituted this action for the purpose of quieting their title to fifteen specific lots de-

scribed in the complaint. The defendant Harriet F. Thomas answered the complaint, admitting that she claimed an interest in the property described in the complaint which was adverse to any claim of plaintiffs. She likewise filed a cross-complaint wherein it was alleged that she was the owner and holder of two promissory notes executed by H. B. Adsit and wife and of the mortgage executed to secure payment of said notes; that subsequent to the execution of the notes and mortgage Adsit conveyed the mortgaged premises to plaintiffs who assumed the said mortgage and agreed to pay the indebtedness which it was given to secure; that a portion of the principal of said notes was paid, but that the balance of the indebtedness represented by the notes, together with interest thereon, was long past due. The cross-complaint concluded with a prayer that the said defendant have judgment against plaintiffs for the amount claimed and that the mortgaged premises be sold for the purpose of satisfying the judgment and that, if the proceeds realized from the sale of the property should not be sufficient for the purpose, a judgment for the deficiency should be entered against plaintiffs. The plaintiffs interposed a demurrer to the cross-complaint which was overruled, whereupon they filed an answer to the cross-complaint. The action proceeded to trial on the issues presented by the pleadings and upon the termination of the trial the court rendered its judgment in favor of the defendant, adjudging that her mortgage be foreclosed in accordance with the prayer of the cross-complaint. From the judgment thus rendered the plaintiffs have appealed.

The record discloses that the following facts were developed during the trial of the action: On January 5, 1926, appellants entered into a contract with H. B. Adsit whereby they agreed to purchase from Adsit 46 acres of land comprising some 84 lots in a platted tract known as ''Olivewood Acres'' in San Diego County. The purchase price for the land was stated to be $18,400 and was to be paid in specified installments. The sum of $200 was paid by the purchasers at the time the contract was executed. At this time Adsit did not own the property, but merely had an option to purchase it from the owner who was the respondent, Harriet F. Thomas. He did, however, at some time subsequent to January 5, 1926, secure a deed to the property and on

February 1, 1926, he executed two promissory notes in favor of Harriet F. Thomas. Each note was in the amount of $3,833. One note was payable on February 10, 1927, and the second note matured on February 10, 1928. To secure the payment of these notes Adsit, on February 1, 1926, executed a mortgage on the above-mentioned property. On the same date Adsit and his wife executed a grant deed conveying the property to appellants. The evidence shows that the purchase of the land by Adsit was a part of the same transaction whereby he sold the property to appellants. It also appears that, prior to the delivery of the deed from Adsit to appellants they paid a further sum of $7,800 in addition to the $200 paid on January 5, 1926. Appellants made the payments of interest due on the two notes until February, 1931. The last payment was made on February 17, 1931, and constituted payment of interest on the notes until February 10, 1931. One of the two notes was due, according to its terms, on February 10, 1927, and appellants requested an extension of it for one year, which was granted by respondent. The record fails to show whether a similar extension was granted in 1928. However, during the month of February, 1929, respondent requested that appellants pay the full amount of both notes. Certain negotiations then took place between the parties and on February 27, 1929, the respondent expressed a willingness to grant a further extension of one year provided one-fifth of the principal amount of the two notes then overdue should be paid. Respondent's offer was accepted by appellants who, during the year 1929, made three payments on the principal of said notes which aggregated $1533.20. These payments were made on March 21, 1929, August 16, 1929, and on October 2, 1929. The first payment amounted to $533.20, and the second and third amounted to $500 each. On February 17, 1931, appellants made a payment of the interest due on the notes on February 10, 1931, and in a letter which was inclosed with the check representing the interest payment, an acknowledgment of a realization that the principal of the notes was then due was made. No request was made for a further extension, although there was an expression of a hope that the interest payment would be satisfactory "for the time being", and an assurance that payment of the full amount due would be "forthcoming at the earli-

est possible date''. The respondent acknowledged receipt of the payment of interest by a letter which was dated February 28, 1931. This letter contained no suggestion that payment of the principal of the notes would be further extended. During the month of September, 1931, certain negotiations were had between the parties which resulted in the acceptance by respondent of 254 shares of capital stock in a certain Arizona corporation and an agreement by certain individuals to purchase said stock for the sum of $25 per share. Respondent thereupon surrendered to appellant Hazelton the two promissory notes and executed a release of the mortgage. On September 28, 1931, respondent instituted an action against appellants whereby she sought to have her release of the mortgage canceled on the ground that the surrender of the notes and the release of the mortgage had been accomplished through the fraud and misrepresentation of appellant Hazelton. The prayer of the complaint in the action demanded that appellants be restrained from conveying title to the mortgaged premises, that they be required to return the notes, that the mortgage be restored, and that it be adjudged that it constituted a first lien upon all of the land described in it. The appellants were served with process in the action and failed to make an appearance, whereupon their default was duly entered. A decree was thereupon entered in the action ordering that the release of mortgage executed by respondent be canceled and the mortgage declared to be in full force and effect and adjudged to be a first lien upon the real property described in it and that the promissory notes be returned to respondent. On December 22, 1931, appellants Thomas A. Hazelton and Sophie Marie Hazelton made written demand upon respondent that she release to them, free and clear of the mortgage lien, fifteen specified lots. This demand was made in reliance upon a certain release provision contained in the mortgage. Upon the failure of respondent to comply with the demand the present quiet title action was instituted by appellants.

The first contention advanced by appellants is that the trial court erred in overruling the demurrer to respondent's cross-complaint. In support of this contention it is urged that the cross-complaint shows on its face that the mortgage, whose foreclosure is sought by the cross-complaint, is a mortgage on real property other than the land men-

tioned in appellants' complaint. It is said, therefore, that the relief sought by the cross-complaint neither relates to the contract or transaction upon which the action was brought nor does it affect the property to which the action relates as required by section 442 of the Code of Civil Procedure. The contention of appellants in this regard may not be sustained. The mortgage whose foreclosure is sought is one which covers eighty-four lots, fifteen of which are the lots the title to which is sought to be quieted in appellants by their complaint. It is apparent that if the mortgage had not been in existence there would have been no occasion for the institution of the present action. The lien of the mortgage is the very claim or cloud on appellants' title whose removal is sought by the complaint. While it is true that the complaint is in the usual brief form alleging simply appellants' title and right to possession and alleging that respondent claims an estate or interest in the property adverse to appellants, this is by no means conclusive. "The facts surrounding the cause of action and not the form of the complaint are determinative of what constitutes the transaction." (*Hanes* v. *Coffee,* 212 Cal. 777 [300 Pac. 963, 965]; *California Trust Co.* v. *Cohn,* 214 Cal. 619 [7 Pac. (2d) 297]; *Martin* v. *Hall,* 219 Cal. 334 [26 Pac. (2d) 288].) In accordance with this view it is evident that this action to quiet title arises out of the fact that respondent claims an interest in the land by virtue of the mortgage, and in the final analysis both the claim of appellants to have their title quieted and respondent's demand that the mortgage be foreclosed relate to the same transaction, i. e., the mortgaging of the property, and both claims must be adjudicated upon a consideration of the same issues (*Hanes* v. *Coffee, supra*). We entertain the opinion, therefore, that the trial court did not err in overruling appellants' demurrer to respondent's cross-complaint.

█ The second contention of appellants is that the trial court erred in finding that appellants assumed the mortgage and agreed to pay the indebtedness secured thereby and that they are therefore liable for any deficiency that may remain upon a sale of the mortgaged premises. The question of whether or not appellants assumed the mortgage and agreed to pay the notes whose payment it was given to secure is a pure question of fact. The familiar rule binding upon a

reviewing court that, if the record discloses the presentation of any evidence which tends to support the court's finding it may not be disturbed, is therefore applicable. The record herein does disclose the presence of evidence supporting the finding that appellants assumed the mortgage. The witness Adsit testified that appellants T. D. Bradbury and Thomas A. Hazelton, who were concededly acting for the two other appellants as well as for themselves, stated to him that "they would pay a half of the mortgage in one year and a half of it in two years". This evidence, although directly contradicted by the testimony of appellants T. D. Bradbury and Thomas A. Hazelton, furnishes sufficient basis for the court's finding that appellants assumed the mortgage and answers appellants' objection that the finding is lacking in evidentiary support.

The most important contention presented by appellants upon this appeal is that the trial court erred in holding that they were not entitled to a release of the fifteen lots described in their complaint. Appellants' claim that they were entitled to the release is based upon a provision which is contained in the mortgage executed by Adsit and wife on February 1, 1926. This provision reads as follows: "And also that mortgagor while not in default shall be entitled to a separate release of each or any of said lots or parcels at a flat release price of One Hundred Dollars ($100.00) each up to the total amount which has at any time been paid upon the principal of said notes, the lots to be released to be selected at the time of payment or at any time thereafter by the mortgagor; all payments for releases made by mortgagor to be applied upon the principal of the note or notes falling due next thereafter." As hereinabove noted, the evidence produced during the trial of the action showed that during the year 1929 appellants made three payments aggregating $1533.20 on the principal amount of the notes which was secured by the mortgage. These payments were made as a result of negotiations between respondent and appellants. The evidence shows that respondent and members of her family who were interested in the property desired that payment of the full amount of the principal of the notes should be made and the "whole thing settled up". This is disclosed by a letter addressed by respondent to appellant Thomas A. Hazelton on February 27, 1929.

This letter also contains an expression of willingness to extend the time of payment for another year provided one-fifth of the total amount then due were paid. Appellant Thomas A. Hazelton evidently replied to this letter offering to pay one-fifth of the principal in three installments, for there was introduced in evidence a second letter sent by respondent to Thomas A. Hazelton on March 11, 1929. This letter contains the following language: "My dear Mr. Hazelton—Your letter received. The arrangement you propose will be very satisfactory to my sister—that is $533.20 at present—$500.00 at intervals of three months until the $1,533.20 is paid." The evidence further shows that on March 21, 1929, a payment of $533.20 was made by appellants on the principal of the notes, a second payment of $500 was made on August 16, 1929, and a third payment of $500 on October 2, 1929. The court found that, at the time of making the aforesaid payments upon the principal of the notes, appellants were in default in the payment of the mortgage indebtedness. This finding is attacked by appellants. It is argued that the granting by respondent of an extension of one year in the time of payment of the principal, as shown by her letter of March 11, 1929, and her acceptance of the three payments during the year 1929, necessarily related back to the due date of the notes, viz., February 10, 1929, and cured the default which then existed and estopped respondent from asserting that there had been any failure to perform precisely at maturity. This contention merits analytical consideration.

It is obvious that appellants rely solely upon the release clause of the mortgage. This must be so for it is the only provision which furnishes any force to their claim that they are entitled to have their title to fifteen lots quieted against respondent's mortgage lien. Certainly, if the mortgage had contained no release provision there could have been no pretense on their part that they were entitled to have any of the mortgaged premises declared freed from the mortgage lien. Furthermore, appellants are driven to seek a literal interpretation of the release clause, for the evidence conclusively shows that they made no demand for a release of any lots until the month of December, 1931, when they were clearly ten months in default in the payment of the principal of the notes which was due on February 10, 1931.

Since the release clause provides that the lots to be released may be selected at the time of payment "or at any time thereafter by mortgagor" it is urged that a literal interpretation of the above-quoted language means that, at the time of payment, appellants acquired a vested right to require a release either at that time or at any time thereafter. However, if appellants insist upon a strict interpretation of one part of the release clause they will not be heard to complain if the whole of it is literally construed. The language of the provision is that "mortgagor *while not in default* (italics ours) shall be entitled to a separate release of each or any of said lots or parcels." ▮ The ordinary meaning of the word "default", when used with respect to an obligation created by contract, is failure of performance. When used with reference to an indebtedness it means simply nonpayment. It can hardly be maintained that, at the time the payment of $533.20 was made on March 21, 1929, appellants were not in default. When the date on which payment of the principal of the notes should have been made according to the express terms of the notes had passed, appellants were in default and they continued in default at the time the payment was made. As a matter of fact, the payment by appellants of the sum of $1533.20 during the year 1929 was the only consideration for respondent's promise to extend for one year the time of payment of the principal of the notes. Inasmuch as the full amount of the principal was overdue on March 11, 1929, respondent's agreement to extend the time of payment in consideration of the payment of a part of the debt was *nudum pactum,* since the payment of a part of the debt did not constitute valid consideration for the extension (*Braun* v. *Crew,* 183 Cal. 728, 734 [192 Pac. 531]). Therefore, appellants were in default at all times subsequent to February 10, 1929, and this default was not cured by the payment by appellants of a part of the amount then overdue.

In support of their contention that they were entitled to a release of fifteen lots upon payment of the sum of $1533.20 during the year 1929, appellants place much reliance upon the decision in *Sacramento S. F. L. Co.* v. *Whaley,* 50 Cal. App. 125 [194 Pac. 1054]. The cited case is not apropos to the problem presented in the present action as the release clause there considered contained no limitation that

any payment for a release of land from the mortgage lien had to be made when the mortgagors were not in default. This fact impelled the following statement appearing at page 137 of the above-cited volume: "It will be observed that the release clause with which we are directly concerned contains no provision specifying a particular time at which payments may be made."

■ The view which we take of appellants' contention that they were entitled to a release of the fifteen lots described in the complaint renders it unnecessary to give prolonged consideration to a further contention that the trial court committed reversible error in admitting in evidence the judgment-roll in the prior action instituted by respondent against appellants for the purpose of having restored the lien of her mortgage which had been released through the alleged fraud of appellant Thomas A. Hazelton. Appellants' argument in this regard appears to be that the effect of the decree in the former action was simply to restore the mortgage lien as of September 14, 1931, the date on which respondent surrendered the two promissory notes and executed a release of the mortgage in return for the delivery to her of certificates of stock in a certain corporation, and that appellants' right to a release of the fifteen lots had fully vested, although it had not been exercised and that the mortgage lien on September 14, 1931, was subject to appellants' right to a release and, therefore, the restoration of the mortgage lien as of September 14, 1931, had no effect on appellants' right to demand a release of the property described in the complaint. The essential basis of this involved argument is necessarily that appellants, by virtue of the payment of the sum of $1533.20 during the year 1929, had acquired a vested right to demand, either then or at any time thereafter, that respondent release to them the fifteen lots which they selected in December, 1931. As we have heretofore indicated our opinion that appellants were in default when they made the payments in the year 1929, it follows that appellants were not entitled to demand the release of any part of the mortgaged premises in accordance with the release clause and appellants' argument may not be sustained.

■ The final contention advanced by appellants is that the court erred in decreeing that appellants "take noth- ·

ing''. It is said that this amounted to a denial of any title whatever in appellants. It must again be observed that appellants by their complaint sought the rendition · of a decree that respondent has no estate or interest whatever in the fifteen specific lots described in the complaint. The complaint contains no allegation of willingness to pay the mortgage debt and the record fails to show any offer by appellants to pay it. The basis of their demand for a decree quieting their title to the fifteen lots is the claim that they are entitled to have the property released from the mortgage lien without any further payment by reason of the release clause of the mortgage. This claim was properly denied by the trial court and under the circumstances disclosed by the record the court was justified in rendering a decree that they take nothing. ■ Appellants occupy the position of mortgagors who are seeking to quiet their title against a mortgagee without paying or offering to pay the debt for which the mortgage was given. This they may not do. The only method for them to quiet the mortgage is to pay the debt which it secures (*Brandt* v. *Thompson,* 91 Cal. 458, 462 [27 Pac. 763]; *Burns* v. *Hiatt,* 149 Cal. 617, 621 [87 Pac. 196, 117 Am. St. Rep. 157]).

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 22, 1934.