Argued November 15, affirmed as modified December 11, 1968

## COLUMBIA DEVELOPMENT, INC. ET AL, *Appellants, v.* WATCHIE ET AL, *Defendants,* PARK CITY CORPORATION, *Respondent and Cross-appellant.*

448 P. 2d 360

*Roger A. Nelson,* Portland, argued the cause for appellants. On the briefs were Jack H. Cairns and Raymond J. Conboy, Portland.

*James O'Connor,* Seattle, Washington, argued the cause for respondent and cross-appellant. With him on the brief were Rauscher, O'Connor & Kiefer, Seattle, Washington, and Thompson and Adams, Beaverton.

Before PERRY, Chief Justice, and SLOAN, GOODWIN, HOLMAN and LANGTRY, Justices.

LANGTRY, J. (Pro Tempore).

The contending parties in this appeal are the plaintiffs and the Park City Corporation which is referred to as defendant in this opinion. Other defendants are not involved in the disputed questions.

Plaintiffs sold certain real property for $165,000 under a conditional sales contract. Defendant, through assignments, became the contract purchaser. After several instalments of principal and interest had been paid in the total sum of $92,465.19, of which $63,232.98 was principal and the balance was interest, defendant defaulted on July 1, 1966, on a substantial payment

then due. On July 12, 1966, plaintiffs accelerated the rest of the payments under the contract and at approximately the same time, perhaps with letters crossing in the mail, defendant requested a release of certain described property in conformance with a provision in the contract, which stated:

"If buyers desire to secure a release[1] of part or parcels of the above described real property, sellers agree to give releases upon the following terms and conditions * * *." (Such terms and conditions are then stated.)

The request which was made by defendant was in conformance with these terms and conditions. Plaintiffs refused to give the partial release requested and commenced this strict foreclosure suit in accordance with the terms of the contract. A title check preliminary to commencing suit disclosed that taxes upon the entire property were unpaid for the four-year existence of the contract. Defendant, under the contract, had the obligation to keep taxes current; therefore, the foreclosure suit alleged the default to be the payment due plaintiffs on July 1, 1966, as well as failure to pay taxes.

After trial, the circuit judge by decree allowed the release of the part of the property requested by the defendant upon condition that it pay all of the taxes due through June 30, 1966. This part of the decree set no time limit in which the defendant was required to pay the taxes. The decree also found the

---

[1] The term "release" in this context is probably incorrectly used. If defendants had owned the title to the property and mortgaged it to plaintiffs, "release" would be a proper term in the mortgage. Since this is a sales contract, what is meant here is that if the defendant makes certain principal payments, plaintiff will make certain conveyances of part of the property in conformance with the terms and conditions of the contract, regardless of whether the entire contract is paid off at such a time.

sum of $101,767.02 principal, plus interest, to be due and allowed plaintiff $5,500 on account of attorney fees in compliance with provision for the same in the contract. The decree gave the defendant a 260-day redemption period. Plaintiffs' appeal challenges the allowance of the release of part of the property as well as that portion of the decree fixing the amount of taxes which defendant must pay to get the release, and the indefiniteness of time allowed to pay the taxes. Defendant cross-appeals from the allowance of $5,500 on account of attorney fees.

■ The principal question is whether, where a conditional sales contract for real property provides for transfer of clear title to part of the property upon payment of specified sums as set forth in the contract, such title must be transferred if the request therefor is made after the contract is in default. This question frequently was the subject of litigation until 1938, but few such cases appear in the indexes since then. Most of the reported cases involve release clauses in mortgages, but we see no reason why their reasoning should not apply to conditional sales contract cases. The most extensive text discussion and collection of decided cases coming to the court's attention on the subject is in an annotation in 115 ALR 1038 (1938). This annotation cites and discusses the precedents relied upon by the contending parties in the instant case. It states the general rule to be that whether such a covenant for partial release continues to be enforceable after a default depends upon the wording of the covenant and the facts and circumstances surrounding its execution. The rule is well stated in *Rosenberg v. General Realty Service, Inc.*, 231 App Div 259, 261, 247 NYS 461 (1931):

"* * * Whether the release privilege survives

default depends, in the absence of equitable considerations, upon the intention of the parties, to be drawn from the language of the covenant read in the light of the other provisions of the contract and of surrounding circumstances at the time of execution. But, depending upon the facts of the particular case, the decision * * * may be varied by a consideration of what now seems fair and just in the light of subsequent events. It is no unusual thing for equity to refuse recognition to express contractual provisions relating to security for loans where their enforcement would not be consonant with justice * * *."

Some cases hold that the right to the release terminates upon a default in payments, under the theory that the clauses of the contract are dependent, and one may not receive the benefit of the release clause and at the same time deprive the mortgagee of the payments to which he is entitled under the contract. 115 ALR 1046 et seq. Many more, however, allow the defaulting party to claim the release at least up to the point where foreclosure proceedings are commenced. 115 ALR 1040-1046. The results in any specific case may vary with the specific terms of the contract. Probably the leading case in support of the majority view is *Vawter v. Crafts*, 41 Minn 14, 17-18, 42 NW 483 (1889):

"It is claimed, however, that this agreement to give releases is conditioned upon performance by the mortgagors of all the covenants and conditions of the mortgage, and that, as default had been made in these, the right to demand a partial release no longer existed. There is certainly no express provision to this effect. By its terms the covenant is unconditional. If there is any such condition, it must be implied from other provisions in the mortgage. * * * Reference is made to the supposed injustice and unreasonableness of construing

the covenant as requiring the mortgagee to execute a partial release after there had been default in the conditions of the mortgage, and interest had accrued, and perhaps expenses incurred in commencing foreclosure proceedings. But we cannot see sufficient force in this to warrant attaching by implication a condition or limitation to the covenant. If the mortgagee is paid the proportionate share of the accrued interest, and reimbursed for his expenses, we do not see how he can be prejudiced. His remaining security would be just as ample as if the release had been demanded before default, and, in case foreclosure proceedings had been commenced, they would not be defeated or affected, as to the remaining lots, by the execution of a partial release. On the other hand, a contrary construction might work harshly against purchasers from the mortgagors, and defeat the very purpose for which the covenant was inserted. * * * Construing this covenant in connection with the other provisions of the mortgage, and in the light of the manifest purpose which it was designed to subserve, we are of the opinion that the right to a partial release upon the stipulated terms continues until the mortgagee has fully executed the power by sale of the mortgaged premises * * *."

The Florida Supreme Court, in a recent decision, came to the same result with a different approach:

"* * * [R]elease clauses of this sort create vested rights which remain vested even beyond default and may be claimed at any time until a decree of foreclosure is entered. [Citing two Florida cases.]" *Empress Homes, Inc. v. Levin,* 201 S2d 475, 477 (Fla 1967).

Plaintiff contends that the particular language employed in the instant contract prevents this case from being controlled by the majority view indicated above. The crucial paragraph of the contract in this regard provides that if the buyers perform all of the

requirements of the contract the sellers will then give a warranty deed to all of the property. This paragraph then ends with the following language:

> "[I]t being further agreed by sellers that the undertakings of this paragraph shall fully apply to any conveyance made of released property hereunder."

Plaintiffs say that this provision exempts them from the requirement to give releases if the buyer at the time he makes the request therefor is in default. They say inasmuch as defendant made its request 11 days after it was in default on payments, and while it was also in default as to payment of taxes, the request came too late. Against this, defendant says that its right to request the releases accrued with a $40,768.80 payment made approximately one year before July 11, 1966, and it justifiably could have made the request at any time after that. The latter contention ignores the default in payment of taxes. The total taxes unpaid through 1965-66 were $5,096.29, plus interest; whereas, the amount paid on the contract which authorized the partial transfer of title totaled $40,768.80. Thus, the circumstances and equities are favorable to the defendant.

Counsel placed conflicting interpretations upon what is meant when the contract states that it is "further agreed by sellers that the undertakings [to give a deed to all of the property upon full compliance with the contract] * * * shall fully apply to any conveyance made of any released property hereunder." It is difficult to understand what exactly was meant. If the intention was to say that no release could be requested while any of the buyer's obligations were in default it would have been easy to have incorporated such language in the release clause itself, as was done

in similar contracts in question in *Bradbury v. Thomas*, 135 Cal App 435, 27 P2d 402 (1933), and *Bleyer v. Veeder*, 119 NJ Eq 398 (Ch 1936), 183 A 203. Whether the language in question here can be interpreted to have the meaning plaintiffs ascribe to it, it would not in any event appear to be a sufficiently strict clause to avoid the fact that it would be inequitable under the circumstances not to allow a release. The price therefor, within the contemplation of the contracting parties, had been paid up for about a year before the payment default and even longer before the foreclosure proceedings were commenced. The nonpayment of taxes had constituted a default earlier but, as already noted, in amount of money the unpaid taxes were much less than the money defendant had paid plaintiffs. The plaintiffs are not prejudiced for it is apparent that plaintiffs still have ample security and the substantial security for which they contracted, and the decree does require that all of the taxes on all of the property must be paid before the partial transfer of property occurs.

■ The plaintiffs have a substantial complaint with reference to the requirements of the decree for payment of taxes. The defendant should not in equity be allowed to exercise its right to a release without bringing the taxes upon the entire tract current in conformance with its contract. The trial court recognized this. But we are of the opinion that the obligation to pay the taxes should continue until defendant obtains title to the released property. By requiring this, defendant will find advantage in promptly meeting the obligation to pay the taxes. It should not be overlooked that defendant legally has had the right to possession of the property since the default in payment which occurred on July 1, 1966. The defendant

should not be allowed an indeterminate time to pay the delinquent taxes. The decree of the circuit court is modified to require that taxes upon the entire property must be paid by the defendant, prorated to the date of the deed for the released property; that the right to pay the taxes and obtain a deed for the part demanded shall terminate 30 days from the date the mandate is entered upon the record in the circuit court; and that the property to be deeded shall be foreclosed if the defendant does not meet these conditions. In briefs it is indicated that in order to protect the property from tax foreclosure the plaintiffs have paid some or all of the taxes. The requirement of this decree that the defendant pay the taxes shall include such sums for taxes as the plaintiffs have paid which are the obligation of the defendant under the contract, together with interest at 6 per cent from the date on which such taxes were paid by the plaintiffs, and the 30-day termination date mentioned above shall apply to such payment.

The 260-day redemption period allowed by the circuit court was reasonable, but it has, on account of this appeal, now expired. Therefore, the defendant shall have an additional 60-day period from date of entry of mandate in the circuit court in which to pay all sums due under the principal contract, together with interest at the rate specified in the contract in order to redeem.

■ On cross-appeal concerning attorney fees, this court has reviewed the record and concludes that the allowance of $5,500 was in accordance with the terms of the contract. The defendant was in default in a very substantial sum; the plaintiff was entitled under the contract to sue for strict foreclosure in such event; the contract provides for reasonable attorney fees

against the buyer if seller justifiably sues to enforce the contract. The fact defendant has prevailed on the substantial question of release of part of the property does not offset these other facts which justify giving effect to that part of the contract concerning attorney fees. The amount allowed for attorney fees by the trial judge was reasonable.

Except as modified herein, the decree of the trial court is affirmed and the case is remanded for entry of decree in accordance with this opinion.

Costs to neither party.