A. Harvey **BLOCK**, Appellant,

v.

**FORD MOTOR CREDIT COMPANY**, Appellee.

**FORD MOTOR CREDIT COMPANY**, Appellant,

v.

A. Harvey **BLOCK**, Appellee.

No. 5952.

District of Columbia Court of Appeals.

Argued Nov. 2, 1971.

Decided Jan. 17, 1972.

Rehearing and Rehearing En Banc Denied Feb. 15, 1972.

Benny L. Kass, Washington, D. C., for appellant A. Harvey Block.

Laidler B. Mackall, Washington, D. C., for appellant Ford Motor Credit Co. William G. Christopher, Washington, D. C., was on the brief.

Before FICKLING, GALLAGHER and PAIR, Associate Judges.

FICKLING, Associate Judge.

This case raises the question of the validity of a waiver of defense clause in a retail installment contract executed and to be performed in the State of Maryland. Summary judgment was granted Ford Motor Credit Company (hereinafter FMCC) from which cross-appeals were filed. We affirm.

In January 1969 Mr. A. Harvey Block purchased a new Ford automobile from a Ford dealer in Baltimore, Maryland. On

the day of purchase, Block signed a retail installment contract in the principal amount of $4,077.36, which provided for 36 consecutive monthly installments of $113.26, commencing March 5, 1969. Four days after the sale, the dealer assigned the contract to FMCC for $3,500.[1] After making a few monthly payments which totaled $561.30, Block began tendering checks for 15% less than the amount called for by the contract. With each of these checks, he wrote a letter requesting FMCC's assistance in obtaining repair of several defects in the car. FMCC waited three months, then returned the discounted checks and invoked the acceleration clause seeking payment of the unpaid balance of the contract. This suit followed.

After considerable pre-trial discovery, FMCC moved for summary judgment relying principally on a "waiver of defense" clause in small print on the back of the contract form, which provides:

> Buyer understands and agrees that Buyer will settle directly with the Original Seller all claims, setoffs, counterclaims and other defenses there may be against the Original Seller and that Buyer shall not setup any such claim, setoff, counterclaim or other defense against any such subsequent holder.

At a hearing on the motion, the following exchange took place:

> MR. MACKALL (Counsel for FMCC): In other words, the issues of facts involved are not disputed because they consist of the plaintiff's answers to interrogatories and the defendant's answers to the plaintiff's requests for admissions.
>
> So therefore, I believe the parties agree, with respect to the facts involved in the determination of the motion for summary judgment, no material issues of facts are disputed.

THE COURT: Is that correct, sir?

MR. KASS (Counsel for Block): That is correct, Your Honor.

THE COURT: Very good. So we will look to the interrogatories, answers and admissions as a basis of fact for this determination.

MR. KASS: Yes, sir. May I also raise one other legal issue, and that is the question of whether defendant is in fact in default.

After hearing argument the trial court ruled that "defendant [Block] is in default in the performance of his part of the contract" and that "defendant owes $4,077.36 less finance charges accruing after today and less payments already made." Block's motion for reconsideration was denied and these cross-appeals followed. The parties have agreed that the applicable law is that of the State of Maryland.

## PART I

■ Block's first argument is that he was not in default because he tendered reduced payments to FMCC. We disagree. The acceleration clause provides in relevant part:

> 8. . . . In the event Buyer defaults in any payment . . . Seller shall have the right, at its election to declare the unpaid portion of the Time Balance, together with any other amount for which Buyer shall have become obligated hereunder, to be immediately due and payable. . . .

The Court of Appeals of Maryland has recently held:

> When used in respect of an obligation created by contract, the ordinary meaning [of "default"] is failure of performance; when used with reference to an indebtedness, it means simply non-payment. Bradbury v. Thomas, 135 Cal.App. 435,

1. The $577.36 difference between the amount paid by FMCC and the face amount of the contract consisted of the $4 recording fee and the $573.36 difference between the net cash price and the installment sale price.

*27 P.2d 402, 405 (1933). [Nylen v. Geeraert, 246 Md. 4, 226 A.2d 878, 880–881 (1967).]*

In the case at bar, the contract calls for payments of $113.26 per month until the full amount is paid. Block tendered payments of 15% less than the specified amount and stated that he was willing to pay the full amount only if his car was repaired. Professor Corbin has stated that, "A debtor may pay nine-tenths of his debt, but fail to pay the other tenth. He has committed a breach of contract." 4 A. Corbin, Contracts § 945 at 808 (1951). *See also* 26A C.J.S. Default at pages 127–128. Here the specified amount was intentionally not paid, thus there was a default.

█ Block next claims that the trial court's grant of summary judgment was improper because there was a genuine question of fact which should have been sent to a jury, *i. e.,* "Did Block understand the meaning of the waiver of defense clause?"

In denying Block's motion for reconsideration, the trial court stated:

This Court takes the position that in the absence of fraud or deception, which is not claimed here, the defendant is bound by the terms of the contract he signed as a matter of law whether or not he availed himself of the opportunity to read and understand its terms.

Under Maryland law, absent fraud, duress or mistake, the one who has the capacity to understand the written contract, who reads and signs, or without reading it or having it read to him signs it, is bound by his signature as to all its terms. Gagnon v. Wright [D.C. App.] 200 A.2d 196 (1964), see also Upton v. Triblecork [Tribilcock] 91 U.S. 45 [23 L.Ed. 203] (1875); Paterson v. Reeves, 113 U.S.App.D.C. 74 [304 F.2d 950] (1962).

The defendant in this case is a Ph.D. business executive and can hardly be heard to say that he did not have the capacity to understand the plain language of the instrument.

We agree that the trial court correctly stated the Maryland law and properly applied it to the facts in the instant case. *See* Devereux v. Berger, 253 Md. 264, 252 A.2d 469, 471 (1969).

█ Block's third contention is that Md. Code Ann. Art. 95B, § 2–302(2) (1963) [2] "precludes the granting of summary judgment." [3] This contention is without merit. Official Comment 3 to Section 2–302 states in full:

3. The present section is addressed to the court, and the decision is to be made by it. The commercial evidence referred to in subsection (2) is *for the court's consideration, not the jury's.* Only the agreement which results from the court's action on these matters is to be submitted to the general triers of the facts. (Emphasis supplied.)

Here counsel for both parties stipulated that there were no disputed facts and that they relied on the evidence in the record. [4] In light of this stipulation, it is difficult to understand how Block can now assert that he was not "afforded a reasonable opportunity to present evidence." We hold that

---

2. Section 2–302. Unconscionable contract or clause.
  (1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

  (2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

3. Brief for Appellant (Block) at 9.

4. See the portion of the transcript reprinted at p. 230, *supra.*

he was not denied such a "reasonable opportunity" and that summary judgment was proper. Morris v. Capitol Furniture & Appliance Co., D.C.App., 280 A.2d 775 (1971).

■ Block also argues that the trial court erred in enforcing the contract because the assignment failed to meet the "good faith" requirement of Md.Code Ann. Art. 95B, § 9–206(1) (1963), which provides in relevant part:

> § 9–206. Agreement not to assert defenses against assignee; modification of sales warranties where security agreement exists.
>
> (1) Subject to any statute or decision which establishes a different rule for buyers or lessees of consumer goods, *an agreement* by a buyer or lessee that he will not assert against an assignee any claim or defense which he may have against the seller or lessor is enforceable by an assignee who takes his assignment for value, *in good faith* and without notice of a claim or defense, except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument under the subtitle on commercial paper (subtitle 3). . . .

(Emphasis added.)

According to Block "good faith" [5] is lacking here because there is a close connection between the seller, an authorized Ford dealer, and the assignee, FMCC, a wholly-owned subsidiary of the Ford Motor Company.[6] In rejecting this contention, the trial court considered the undisputed facts.[7] and concluded:

> From a balancing of these undisputed facts in this case, it is evident that de-

---

5. "'*Good faith*' means honesty in fact in the conduct or transaction concerned." Md.Code Ann. Art. 95B, § 1–201(19) (1963).

6. "[C]ourts have found that the assignee is not protected against the buyer's defense by a clause in the contract or that the holder of a note, by reason of his too close connection with the underlying transaction, does not have the rights of a holder in due course." Md.Code Ann. Art. 95B, § 9–206, Comment 2 (1963). *See also* 11 Am.Jur.2d Bills and Notes § 440 (1963) ; 44 A.L.R.2d 8, 144 (1955).

7. (1) During the preceding fiscal year no director, officer, employee or owner of any interest in FMCC had been a director, officer, employee or owner of any interest in Schmidt Ford Sales, Inc. (Seller) and was not related by blood or marriage to any director, officer, employee or owner of any interest in Seller.

(2) There had been no contract or agreement of any kind, written or oral, between FMCC and Seller with respect to the discounting, assigning, negotiating or transferring of Seller's contracts prior to or at the time of FMCC's receipt of Block's contract.

(3) Although FMCC had acquired about 2,500 such contracts from Seller in each of the last three years, these contracts represented an infinitesimal percentage of all such contracts acquired by FMCC in each of the last three years.

(4) FMCC does not accept all of Seller's contracts offered to it by Seller.

(5) Such contracts are declined by FMCC where the buyer has an unsatisfactory credit rating.

(6) Although the number of such contracts FMCC has declined to accept from Seller in each of the last three years is not specifically known, there is a high rejection rate.

(7) FMCC has made no instructions, suggestions, recommendations or other communications to Seller with respect to sales policy, extension of credit or other business practices of Seller.

(8) FMCC has not allowed Seller to refer its customers to FMCC for credit in Seller's sales presentations.

(9) There has been no other litigation, settled, tried or pending, in the last five years to which FMCC has been a party involving sales contracts transferred by Seller.

(10) FMCC prepared and supplied the sales contract form used by Seller.

(11) There were other contracts outstanding between FMCC and Seller prior to or at the time of FMCC's receipt from Seller of Block's contract.

(12) FMCC has allowed its name to be displayed for advertising purposes at Seller's place of business.

(13) Besides Block, consumer parties to sales contracts transferred to FMCC by Seller informed FMCC of their dissatisfaction with Seller's performance of its obligations.

fendant's claim is not sufficient in law to defeat plaintiff's claim as a holder in due course.[8] Furnishing forms and purchasing notes alone are not enough to give a clear indication of close associations between FMCC and Schmidt. Wilson v. Gorden, et al., D.C.Mun.App., 91 A.2d 329 (1952).

We are unable to say that the trial court's conclusion based upon the undisputed evidence was clearly erroneous. While Maryland recognizes the "close connectedness doctrine,"[9] there is no showing on this record that FMCC had a substantial voice in, or control of, or a vested interest in the underlying transaction. See Unico v. Owen, 50 N.J. 101, 232 A.2d 405 (1967).[10] The following facts—(1) that FMCC prepared and supplied sales contract forms to the seller; (2) that it permitted its name to be displayed for advertising purposes in seller's place of business; (3) that it was aware of some complaints about the seller; and (4) that it acquired about 2,500 such contracts from the seller in each of the last three years[11]—are not sufficient alone to demonstrate that FMCC had a substantial voice in, or control of,[12] or a vested interest in the underlying sales transaction.

■ Similarly Block's final argument—that the contract was unconscionable at the time it was made and is therefore unenforceable[13]—is not supported by the stipulated evidence. The principal case relied on by Block is Williams v. Walker-Thomas Furniture Co., 121 U.S.App.D.C. 315, 350 F.2d 445 (1965), which stated that:

> Unconscionability has generally been recognized to include an *absence of meaningful choice* on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. . . . (Emphasis added.) [Citing Henningsen v. Bloomfield Motors, 32 N.J. 358, 161 A.2d 69 (1960).] [121 U.S.App.D.C. at 319, 350 F.2d at 449.]

Since the evidence relied upon by Block contains no information concerning the availability of alternative forms of financing from banks, other automobile dealers, credit unions, etc., we hold that the trial court's finding against Block on the issue of unconscionability was correct.

Finally, we point out that Block is not without a remedy for breach of warranty since counsel at oral argument conceded

8. We do not read this statement to mean, as Block contends, that the trial court found that FMCC was a holder in due course. Rather, the record indicates that the trial court used the term "holder in due course" as a shorthand method of characterizing FMCC as an assignee who, under Md.Code Ann. Art. 95B, § 9–206 (1), enjoys the same immunity to a buyer's defenses as does the holder in due course of a negotiable instrument. The requisite standards for holder in due course status and for the status of an assignee who may enforce a waiver of defense clause are virtually identical. *Compare* Md.Code Ann. Art. 95B, § 3–302, *with* § 9–206(1).

9. Kennard v. Reliance, Inc., 257 Md. 654, 264 A.2d 832 (1970).

10. *See, e. g.,* Note, The Status of UCC § 9–206, The Waiver of Defense Clause, 31 U.Pitt.L.Rev. 687 (1970); Comment, Consumer Protection—The Role of Cutoff Devices in Consumer Financing, 1968 Wis.L.Rev. 505; Comment, Waiver of Defense Clauses and Consumer Protection in Installment Sales Contracts, 36 Fordham L.Rev. 106 (1967); Littlefield, Good Faith Purchase of Consumer Paper: The Failure of the Subjective Test, 39 S.Cal. L.Rev. 48 (1966).

11. This figure represents an infinitesimal percentage of all such contracts by FMCC in each of the last three years.

12. There is insufficient evidence in this record for us to determine whether Ford Motor Co., FMCC, and the Ford dealer are in fact a single economic enterprise. *See generally* Berle, The Theory of Enterprise Entity, 47 Colum.L.Rev. 343 (1947).

13. *See* Md.Code Ann. Art. 95B, § 2–302 (1963), quoted at note 2 *supra. See also* Ellinghaus, In Defense of Unconscionability, 78 Yale L.J. 757 (1969); Murray, Unconscionability: Unconscionability, 31 U.Pitt.L.Rev. 1 (1969); Leff, Unconscionability and the Code—The Emperor's New Clause, 115 U.Pa.L.Rev. 485 (1967).

that the dealer from whom Block purchased his automobile is still in business and subject to process.

For the foregoing reasons the decision in Block v. FMCC is affirmed.

## PART II

■ FMCC cross-appeals the trial court's order limiting its recovery to the face amount of the contract less payments already made and less finance charges accruing after the date of the order granting summary judgment. It argues that the language of the acceleration clause was unambiguous and that judgment for the entire amount due under the contract, including unearned finance charges, should. have been awarded by the trial court. We believe that FMCC's position is untenable, therefore, we affirm.

The closest Maryland case on point appears to be Santini v. Fritkin, 240 Md. 542, 214 A.2d 578 (1965), a case involving application of a statute of limitations to an action to recover the balance due on a promissory note containing an acceleration clause. In that case the Court of Appeals of Maryland stated:

> When, however, the holder takes positive action indicating that he has elected to exercise the option [to accelerate maturity], then the full amount of the unpaid balance of principal and *accrued interest* becomes immediately due and payable . . . . (Emphasis added.) [214 A.2d at 580.]

We read this statement to mean that Maryland, like many other states, makes a distinction between accrued interest and unearned interest. The rule followed in those states has been stated in 10 C.J.S. Bills and Notes § 251(a), at page 748, as follows:

> A note providing for the payment of the principal in installments at specified times, and requiring the payment of interest on each installment until maturity, does not require the payment of future unearned interest in the event the ma-

turity date is hastened by virtue of an acceleration clause contained in the note. (Footnote omitted.)

The reasoning behind these decisions is that the retention of unearned interest beyond the time of the payment of the debt would permit the recovery of disproportionate damages, *i. e.*, a penalty, and would therefore be unconscionable. Thus the courts have refused to enforce acceleration clauses except upon cancellation of the unearned interest. *See* In re Mill City Plastics, 129 F.Supp. 86, 89–90 (D.Minn.), aff'd, Northtown Theatre Corp. v. Mickelson, 226 F.2d 212, 214 (8th Cir. 1955); Mann v. Earls, 226 Cal.App.2d 155, 37 Cal. Rptr. 877 (Dist.Ct.App.1964); A-Z Servicenter, Inc. v. Segall, 334 Mass. 672, 138 N.E.2d 266 (1956).

We see no reason why the same principle should not apply to unaccrued finance charges. Therefore, we hold that when an assignee invokes the acceleration clause in a retail installment contract, he may only recover the face amount of the contract and the accrued finance charges, less payments already made.

Affirmed.